Stephen R. HURST, Plaintiff
and Appellant,

v.

Gerald L. COOK, Warden, Main Facility,
Utah State Prison; David L. Wilkinson,
Utah State Attorney General, Defendants and Appellees.

No. 860075.

Supreme Court of Utah.

June 30, 1989.

Phillip G. Jones, Orem, for plaintiff and appellant.

David L. Wilkinson, Sandra Sjogren, Salt Lake City, for defendants and appellees.

STEWART, Justice:

Stephen R. Hurst pleaded guilty to one count of a crime called "sexual abuse of a child first degree." Hurst was initially charged with two crimes: (1) sodomy on a child, a first degree felony, punishable by a minimum mandatory prison term of five, ten, or fifteen years to life and (2) sexual abuse of a child, a second degree felony, punishable by imprisonment for an indeterminate term of one to fifteen years.[1] Pursuant to plea negotiations, the State filed an amended information which charged Hurst with a crime denominated "sexual abuse of a child," but which alleged the elements of aggravated sexual abuse of a child. The aggravating circumstance that

---

1. Before 1984, Utah Code Ann. § 76-5-404.1 (1983 Supp.) read in part:

> (1) A person commits sexual abuse of a child, if, under circumstances not amounting to rape of a child, object rape of a child, or sodomy upon a child or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of a child who is under the age of 14, or touches the breast of a female child who is under the age of 14, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.
> (2) Sexual abuse of a child is a felony of the first degree.
> (3) Sexual abuse of a child is punishable, as a felony of the first degree, by imprisonment in the state prison for a term which is a minimum mandatory term of 3, 6, or 9 years and which may be for life when any of the following circumstances have been charged and admitted or found true in the action for the offense[.]

After a 1984 amendment, the statute, in pertinent part, reads:

> **Sexual abuse of a child—Aggravated sexual abuse of a child.** (1) A person commits sexual abuse of a child, if, under circumstances not amounting to rape of a child, object rape of a child, or sodomy upon a child or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of a child who is under the age of 14, or touches the breast of a female child who is under the age of 14, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.
> (2) Sexual abuse of a child is punishable as a felony of the second degree.
> (3) A person commits aggravated sexual abuse of a child when in conjunction with the offense described in Subsection (1) any of the following circumstances have been charged and admitted or found true in the action for the offense:
> ....
> (h) The offense was committed by a person who occupied a position of special trust in relation to the victim; "position of special trust" means that position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim, and includes, but is not limited to, the position occupied by a youth leader or recreational leader who is an adult, adult athletic manager, adult coach, teacher, counselor, religious leader, doctor, employer, foster parent, babysitter, or adult scout leader, though a natural parent, stepparent, adoptive parent, or other legal guardian, not including a foster parent, who has been living in the household, is not a person occupying a position of special trust under this subsection;
> ....
> (4) Aggravated sexual abuse of a child is punishable as a felony of the first degree by imprisonment in the state prison for a term which is a minimum mandatory term of 3, 6, or 9 years and which may be for life.

elevated the offense from sexual abuse to aggravated sexual abuse alleged that Hurst occupied a position of special trust with respect to the victim. *See* § 76–5–404.1(3)(h). Pursuant to a plea bargain, Hurst pleaded guilty to the charge in the amended information and was sentenced to imprisonment for a minimum mandatory term of three years to life. As part of the plea bargain, the sodomy charge, for which a minimum mandatory sentence of five, ten, or fifteen years could have been imposed, was dismissed.

Thereafter, Hurst filed a petition for a writ of habeas corpus in the district court, asserting that he had been convicted of the crime of sexual abuse of a child, a second degree felony, but that he had been sentenced for a first degree felony. He petitioned the district court to reduce his sentence to that applicable to a second degree felony. The State moved to dismiss the petition on the ground that while the information misstated the name of the crime charged, Hurst had in fact pleaded guilty to the *elements* of aggravated sexual abuse of a child, as alleged in the information. The district court denied the petition on its merits.

Two days later, Hurst filed a second or "amended" petition for a writ of habeas corpus, alleging that he had been ineffectively represented by counsel at the pleading stage of the original proceeding and that he could not lawfully be sentenced for a crime he could not have been found factually guilty of. The essence of his ineffective assistance claim is that his attorney failed to properly advise him during the plea bargaining that he did not hold a "position of special trust" in relation to the victim as defined in § 76–5–404.1(3)(h) and, therefore, there was no aggravating circumstance elevating the crime to a first degree felony.[2] Accordingly, Hurst claims that he is guilty only of simple sexual abuse of a child and that his sentence should be reduced to that for a second degree felony, an indeterminate term of imprisonment of from one to fifteen years.

The warden moved to dismiss the second petition on the ground that under Rule 65B(i)(4) of the Utah Rules of Civil Procedure, the issues plaintiff raised were additional claims which should have been raised and disposed of in Hurst's first petition. In the alternative, the warden moved to deny the petition on the ground that plaintiff's plea to the amended information was made pursuant to a plea bargain by which the charge of sodomy on a child was dropped and the allegation that Hurst had a position of special trust with respect to the victim was added.

The trial court ruled that Hurst was procedurally barred by Rule 65B(i)(4), Utah Rules of Civil Procedure, from raising the claims in his second petition because they either should have been or were raised in his first petition. In the alternative, the trial court held, on the merits, that Hurst had been adequately represented when he pleaded guilty. The court ruled that Hurst had voluntarily pleaded guilty to aggravated sexual abuse of a child in exchange for dismissal of a sodomy charge and was bound by his plea, even though he did not occupy a position of special trust with the child.

## I. RULE 65B(i)—HABEAS CORPUS AND POST–CONVICTION RELIEF

We address first the issue of whether the trial court should have declined to rule on the merits of the claims alleged in the second petition and, instead, should have simply dismissed the writ on the procedural ground that the issues had been or should have been previously adjudicated.

The issue of when successive petitions may be pursued raises sensitive issues concerning the accommodation of the general judicial policy favoring finality of judgments and the constitutional policy embodied in the historic writ of habeas corpus. Rules 65B(f) and 65B(i), the habeas corpus and post-conviction relief provisions of the Utah Rules. of Civil Procedure, establish procedural rules for implementation of habeas and post-conviction relief remedies.

---

**2.** The statutory provision is set out in note 1, *supra.*

Rules 65B(i)(2) and (4) govern applications for successive post-conviction writs. Rule 65B(i)(2) provides in pertinent part:

The complaint shall further state that the legality or constitutionality of his commitment or confinement has not already been adjudged in a prior habeas corpus or other similar proceeding; and if the complainant shall have instituted prior similar proceedings in any court, state or federal, within the state of Utah, he shall so state in his complaint, shall attach a copy of any pleading filed in such court by him to his complaint, and shall set forth the reasons for the denial of relief in such other court. In such case, if it is apparent to the court in which the proceeding under this rule is instituted that the legality or constitutionality of his confinement has already been adjudged in such prior proceedings, the court shall forthwith dismiss such complaint, giving written notice thereof by mail to the complainant, and no further proceedings shall be had on such complaint.

Rule 65B(i)(4) provides:

All claims of the denial of any of complainant's constitutional rights shall be raised in the post-conviction proceeding brought under this rule and may not be raised in another subsequent proceeding except for good cause shown therein.

■ Although a post-conviction relief remedy and the writ of habeas corpus have sometimes been thought to be separate procedures, the writ of habeas corpus has, over the years, absorbed the post-conviction relief remedy to form a single constitutional remedy. Our construction of Rules 65B(i)(2) and (4), therefore, takes place against the constitutional background of the use of the Writ.

The early history of the writ of habeas corpus lies deep in the common law of England. Like much other law administered by the colonies, and later by the United States and the states, the Writ was borrowed from England, and like other law, it was built upon and adapted to fit the needs of the colonists and subsequent generations. With the ratification of written constitutions in the states and the United States, the writ of habeas corpus became a constitutional fixture in American law.

The writ of habeas corpus is the only legal form of judicial process referred to in the Utah and United States Constitutions. From the early common law in England, the Writ provided a judicial means for securing the liberty of a person restrained by arbitrary or oppressive power. Chaffee, *The Most Important Human Right in the Constitution*, 32 B.U.L.Rev. 143 (1952). Historically, the Writ has played such a large role in the history of our law that it has received specific constitutional protection. The Declaration of Rights of the Utah Constitution, Article I, section 5, expressly prohibits restrictions on the availability of the Writ except "when the public safety requires it." That provision states:

The privilege of the writ of habeas corpus shall not be suspended, unless, in case of rebellion or invasion, the public safety requires it.

This provision of the Utah Constitution is essentially identical to Article I, section 9 of the United States Constitution.

■ Quintessentially, the Writ belongs to the judicial branch of government. Article VIII of the Utah Constitution, as initially written, conferred upon the Supreme Court and the district courts the power to issue writs of habeas corpus. When Article VIII was rewritten in 1984, the words "habeas corpus" were left out, but the Supreme Court and the district court were granted the power to "issue all extraordinary writs." See Utah Const. art. VIII, §§ 3, 5 (1A Utah Code Ann. at 65–66 (Supp. 1989)). The term "extraordinary writ" clearly reaches all prerogative writs, but there is no doubt that it also includes the most important of all ancient writs, the writ of habeas corpus.

Furthermore, the separation of powers provision, Article V, section 1 of the Utah Constitution, requires, and the Open Courts Provision of the Declaration of Rights, Article I, Section 11, presupposes, a judicial department armed with process sufficient to fulfill its role as the third branch of government. While the essence of judicial

power cannot be encapsulated in one writ, the writ of habeas corpus is one of the most important of all judicial tools for the protection of individual liberty.

█ Initially, the Writ was not available to collaterally attack a criminal conviction, except on the ground that the court lacked jurisdiction or that a sentence was unlawful. *Thompson v. Harris,* 106 Utah 32, 144 P.2d 761 (1943), *cert. denied,* 324 U.S. 845, 65 S.Ct. 676, 89 L.Ed. 1406 (1945); *Lee Lim v. Davis,* 75 Utah 245, 284 P. 323 (1929); 39 Am.Jur.2d *Habeas Corpus* § 8, at 184 (1968). However, even before the adoption of post-conviction-type relief remedies in this state, this Court recognized that the writ of habeas corpus had a broader application to criminal proceedings than merely testing whether a conviction or sentence falls within the authority of the court. Even before the adoption of the Utah Rules of Civil Procedure, Chief Justice Wolfe wrote for the Court in *Thompson,* 106 Utah at 42, 144 P.2d at 766:

> It is often stated that the scope of review on habeas corpus is limited to the examination of the jurisdiction of the court whose judgment of conviction is questioned. We must never lose sight, however, of the fact that habeas corpus is the precious safeguard of personal liberty. That jurisdictional questions only are reachable by the writ is not such an inflexible rule as cannot yield to exceptional circumstances. It may be better to say that the rule which apparently limits the scope of the writ to jurisdictional questions is not a rule of limitation, but a rule defining the appropriate spheres in which the power should be exercised. Thus it has been held that the writ will lie if the petitioner has been deprived of one of his constitutional rights such as due process of law.

Thus, habeas corpus has become a procedure for assuring that one is not deprived of life or liberty in derogation of a constitutional right, irrespective of whether the error was categorized as jurisdictional or nonjurisdictional.

Although this Court had already expanded the role of the Writ to protect against the denial of a constitutional right in a criminal conviction in *Thompson,* procedures implementing that function were provided by the addition of Rule 65B(i) in 1969 to allow for "post-conviction proceedings" as a branch of habeas corpus.[3] Rule 65B(i) substantially incorporated the Uniform Post–Conviction Procedure Act. *See* Note, *The Need for Habeas Corpus Reform in Utah: A Challenge from the Federal Courts,* 1979 Utah L.Rev. 159, 170; Documentary Supplement, *State Post–Conviction Remedies and Federal Habeas Corpus,* 12 Wm. & Mary L.Rev. 147, 222–23 (1970). An objective of the Uniform Post-Conviction Procedure Act was to liberalize state habeas corpus proceedings and make them "flexible enough so that with sympathetic consideration of pleadings and methods of presenting issues, a prisoner will always be able to raise his claim in a state court and thus, ... there will be no occasion for federal habeas corpus, because a state remedy is available." Annotation, *Uniform Post–Conviction Act,* 11 Unif.L. Ann. 477, 482 (1974).

█ As a general matter, a writ of habeas corpus is not a substitute for an appeal, especially for ordinary types of trial error that are not likely to affect the outcome of a trial. *Bundy v. Deland,* 763 P.2d 803, 804 (Utah 1988); *Andrews v. Shulsen,* 94 Utah Adv.Rep. 11, 773 P.2d 832 (1988); *Wells v. Shulsen,* 747 P.2d 1043 (Utah 1987); *Codianna v. Morris,* 660 P.2d 1101 (Utah 1983); *Brown v. Turner,* 21 Utah 2d 96, 440 P.2d 968 (1968). *But see Andrews v. Morris,* 607 P.2d 816 (Utah 1980); *Pierre v. Morris,* 607 P.2d 812 (Utah 1980); *Martinez v. Smith,* 602 P.2d 700 (Utah 1979).

█ The function of a writ of habeas corpus as a post-conviction remedy is to provide a means for collaterally attacking convictions when they are so constitutional-

---

**3.** Rule 65B(f) is entitled "Habeas corpus." Rule 65B(i) deals with habeas corpus procedure in all post-conviction remedy cases. Rule 65B(f) provides that if the person seeking relief is a prisoner and asserts that there was a substantial denial of his constitutional rights, then the matter shall be handled under Rule 65B(i).

ly flawed that they result in fundamental unfairness and to provide for collateral attack of sentences not authorized by law. The general judicial policy favoring the finality of judgments cannot, therefore, always prevail against an attack by a writ of habeas corpus. As important as finality is, it does not have a higher value than constitutional guarantees of liberty. Protection of life and liberty from unconstitutional procedures is of greater importance than is res judicata. In *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the United States Supreme Court emphasized the point by stating: "Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.... The inapplicability of res judicata to habeas ... is inherent in the very role and function of the writ." This Court has embraced the same view, although in a slightly different context. In *Martinez,* 602 P.2d at 702, Chief Justice Crockett, writing for the Court, stated: "Nevertheless, howsoever desirable it may be to adhere to the rules, the law should not be so blind and unreasoning that where an injustice has resulted the [defendant] should be without remedy." [4]

■ This Court has frequently held that while habeas corpus is not a substitute for appeal,[5] a conviction may nevertheless be challenged by collateral attack in "unusual circumstances," that is, where an obvious injustice or a substantial and prejudicial denial of a constitutional right has occurred, irrespective of whether an appeal has been taken. *Chess v. Smith,* 617 P.2d 341, 343–44 (Utah 1980). *See, e.g., Gonzales v. Morris,* 610 P.2d 1285 (Utah 1980); *Pierre v. Morris,* 607 P.2d 812 (Utah), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980); *Martinez,* 602 P.2d 700; *Helmuth v. Morris,* 598 P.2d 333 (Utah 1979); *Rammell v. Smith,* 560 P.2d 1108 (Utah 1977); *Allgood v. Larson,* 545 P.2d 530 (Utah 1976); *Brown,* 21 Utah 2d 96, 440 P.2d 968. *But see Andrews v. Shulsen,* 94 Utah Adv.Rep. 11, 773 P.2d 832. The "unusual circumstance" rule has often been used by this Court to determine whether habeas corpus relief is appropriate: "[T]he unusual circumstances test was intended to assure fundamental fairness and to require reexamination of a conviction on habeas corpus when the nature of the alleged error was such that it would be 'unconscionable not to reexamine' ... and thereby to assure that 'substantial justice [was] done'...." *Codianna,* 660 P.2d at 1115 (Stewart, J., concurring) (citations omitted).

■ In fact, this Court has frequently addressed and resolved the merits of claims asserted in petitions for writs of habeas corpus even though the issues raised were

---

**4.** One commentator provided the following bit of relevant history concerning habeas corpus:

By the common law of England it is the right of any imprisoned person to apply successively to every tribunal competent to issue a writ of habeas corpus, and each tribunal must determine such an application upon its merits unfettered by the decision of any other tribunal of coordinate jurisdiction, even if the grounds urged are exactly the same. *Eshugbayi Eleko v. Nigeria* [1928] AC (Eng) 459—PC. *Rex v. Gee Dew* (1924) 33 BC 524, [1924] 3 DLR 153.

And it has been held that in England applications could be made for the issue of the writ by one illegally restrained of his liberty to every justice of the kingdom having the right to grant such writs, and that no appeal was allowed there from a refusal of the writ, nor, indeed, could there have been any occasion for such an appeal, as a renewed application could be made to every other justice of the realm until its entire judicial power was thus exhausted. *Ex parte Cuddy* (1889; CC) 14 Sawy 171, 40 F 62.

Or, as stated in *Rathbun v. Baumel* (1922) 196 Iowa 1233, 191 NW 297, 30 ALR 216, courts have held that the writ of habeas corpus is the darling of the English law, and that a party may present his petition for such writ as many times and before as many judges as he may see fit.

The court said in *Hibler v. State* (1875) 43 Tex 197, that the writ is a privilege too dear to freedom to be endangered by intentional abuse of it.

Annotation, *Denial of Relief to Prisoner on Habeas Corpus as Bar to Second Application,* 161 A.L.R. 1331, 1332 (1946).

**5.** Habeas corpus will not lie for ordinary evidentiary, procedural, or instructional errors, unless the error is such that it affects the fundamental fairness of the trial. Usually habeas lies just for constitutional or jurisdictional errors, such as erroneous sentences.

known or should have been known at the time of conviction or initial appeal. *See, e.g., Chess,* 617 P.2d 341; *Gonzales,* 610 P.2d 1285; *Martinez,* 602 P.2d 700; *Helmuth,* 598 P.2d 333; *Rammell,* 560 P.2d 1108; *Brown,* 21 Utah 2d 96, 440 P.2d 968. It follows, and it has long been our law, that a procedural default is not always determinative of a collateral attack on a conviction where it is alleged that the trial was not conducted within the bounds of basic fairness or in harmony with constitutional standards.[6]

■■■■ Nevertheless, the law is not powerless to prevent abuse by prisoners who burden the courts and frustrate the ends of justice by trying to keep a case alive indefinitely. The law can and does protect itself against vexatious and abusive successive petitions for writs. To prevent that, Rule 65B(i)(2) provides that a complaint must state whether the "legality or constitutionality" of a petitioner's confinement or commitment has been previously adjudicated in a prior habeas or other similar proceeding. A ground for relief from a conviction or sentence that has once been fully and fairly adjudicated on appeal or in a prior habeas proceeding should not be readjudicated unless it can be shown that

there are "unusual circumstances." For example, a prior adjudication is not a bar to reexamination of a conviction if there has been a retroactive change in the law, *see generally Andrews v. Morris,* 677 P.2d 81 (Utah 1983); a subsequent discovery of suppressed evidence, *see Gallegos v. Turner,* 17 Utah 2d 273, 409 P.2d 386 (1965), or newly discovered evidence, *see State v. Lafferty,* 776 P.2d 631 (1989). But ordinarily, a ground for setting aside a conviction or sentence may not be relitigated. Nevertheless, the rigors of res judicata do not preserve a conviction or sentence from all subsequent attacks, even if different grounds are alleged. *See, e.g., In re Haverty,* 101 Wash.2d 498, 681 P.2d 835 (1984). Thus, neither collateral estoppel nor issue preclusion is an absolute defense in a habeas case.[7]

The issue before the Court is whether Hurst is entitled to an adjudication on the merits of his claim that his sentence is unlawful even though the lawfulness of his sentence was previously adjudicated pursuant to his first petition for a habeas writ.

■■■■ The prior adjudication of a habeas petition does not bar the adjudication of a

6. Numerous cases have arisen that have called in question the fundamental justice of a conviction where the issue was not, or could not be, dealt with on direct appeal. Prime examples involve cases in which issues arise outside the record, e.g., the subsequent discovery of the suppression of exculpatory evidence, *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); the ineffective assistance of counsel, *Syddall v. Turner,* 20 Utah 2d 263, 437 P.2d 194 (1968), especially in the investigation and preparation of a case, *Martinez v. Smith,* 602 P.2d 700 (Utah 1979); the discovery of new exculpatory evidence, *In re Hall,* 30 Cal.3d 408, 637 P.2d 690, 179 Cal.Rptr. 223 (1981); and fraud committed on the court by the knowing use of false evidence, *Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). *See generally* 39 Am.Jur.2d *Habeas Corpus* §§ 50–64 (1968 & Supp.1989). Furthermore, when the state holds a person under an illegal sentence, that sentence may be attacked collaterally on the ground that the sentence was beyond the jurisdiction of the court and therefore void. *See, e.g., Mulliner v. Dalton,* 101 Utah 51, 117 P.2d 819 (1941); *Lee Lim v. Davis,* 75 Utah 245, 284 P. 323 (1929); *Frankey v. Patten,* 75 Utah 231, 284 P. 318 (1929); *Rasmussen v. Zundel,* 67 Utah 456, 248 P. 135

(1926). We have also found unusual circumstances and remanded for findings on the merits where the record was inadequate to determine whether the petitioner unintentionally pleaded guilty to a charge higher than he intended and failed to appeal because of his ignorance concerning his error. *See Lancaster v. Cook,* 753 P.2d 505, 506 (Utah 1988). The failure to appeal a conviction does not result in a waiver of the right to challenge the lawfulness of a plea. *See Summers v. Cook,* 759 P.2d 341, 344–45 (Utah Ct.App.1988) (defendant could attack guilty plea by collateral attack where trial court had failed to appoint requested new counsel prior to the running of the time to appeal).

7. In *Schad v. Turner,* 27 Utah 2d 345, 496 P.2d 263 (1972), the Court implied that res judicata applies in full force to habeas cases. That has never been the law. *See Sanders v. United States,* 373 U.S. 1, 7, 83 S.Ct. 1068, 1072, 10 L.Ed.2d 148 (1963); *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Salinger v. Loisel,* 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924). To the extent *Schad* stands for that proposition, it is overruled. In plain truth, that statement in *Schad* has simply been largely ignored.

subsequent petition as a matter of res judicata, but Rule 65B(i)(4) does require a showing of good cause for filing a successive writ. If good cause is not shown, the petition should be dismissed for "prior adjudication." Rule 65B(i)(4) does not state what constitutes "good cause shown," and this Court has not previously addressed the meaning of "good cause" in this context.

In *Price v. Johnston*, 334 U.S. 266, 291, 68 S.Ct. 1049, 1062, 92 L.Ed. 1356 (1948), the United States Supreme Court held that successive petitions should be permitted "if for some justifiable reason [the petitioner] was previously unable to assert the rights or was unaware of the significance of relevant facts...." In *State v. West*, 765 P.2d 891, 894–95 (Utah 1988), the Court held that although Rule 65B(i)(4) requires all claims for post-conviction relief to be included in one petition, it nonetheless allows "any number of post-conviction complaints if good cause is shown." [8] *West* is consonant with *In re Haverty*, 101 Wash.2d at 501–04, 681 P.2d at 838–39, which construed a similar Washington state rule in a similar manner.[9] Nevertheless, a prior adjudication of the same ground for relief is sufficient to bar relitigation on that ground, absent unusual circumstances. A showing of good cause that justifies the filing of a successive claim may be established by showing (1) the denial of a constitutional right pursuant to new law that is, or might be, retroactive, *Andrews v. Morris*, 677 P.2d 81, (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the

trial, *Lafferty*, 776 P.2d 631, (3) the existence of fundamental unfairness in a conviction,[10] (4) the illegality of a sentence, *Rammell*, 560 P.2d 1108, or (5) a claim overlooked in good faith with no intent to delay or abuse the writ. *See Potts v. Zant*, 638 F.2d 727 (5th Cir.), *cert. denied*, 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981). *See generally* Note, *The Rush to Execution: Successive Habeas Corpus Petitions in Capital Cases*, 95 Yale L.J. 371, 382–88 (1985). Frivolous claims, once-litigated claims with no showing of "unusual circumstances" or "good cause," and claims that are withheld for tactical reasons should be summarily denied. *See Andrews v. Shulsen*, 94 Utah Adv.Rep. 11, 773 P.2d 832. The burden in a second petition is on the petitioner "to show that the ends of justice would be served by permitting the redetermination of the ground." *Sanders*, 373 U.S. at 16, 83 S.Ct. at 1077. *See also Potts*, 638 F.2d at 751–52.

## II. HURST'S CLAIMS

Hurst's second petition alleges that (1) he was unlawfully sentenced for a first degree felony, (2) he was denied the effective assistance of counsel, and (3) he could not be found guilty of the crime to which he pleaded. We forego addressing the first issue because it was decided by the trial court on the first petition and there is nothing new or different about the claim. Likewise, we forego addressing the second issue raised in Hurst's petition, that he was ineffectively represented by counsel, because that issue is essentially a restatement of the

---

**8.** The appeal in *West* was from the denial of a motion to withdraw a guilty plea, not a denial of a petition for habeas corpus. The two are separate and distinct procedures. West had also filed a petition for a writ of habeas corpus in a lower court, and the two procedures became somewhat strangely intertwined. The issues on appeal, however, were dealt with as if they arose in a habeas proceeding.

**9.** Rule 16.4(d) of the Washington Rules of Appellate Procedure, which governs post-conviction procedures, states in part: "No more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown."

**10.** The United States Court of Appeals for the Tenth Circuit apparently believes that our "fundamental fairness" ground is a constitutional due process ground. *See Morishita v. Morris*, 702 F.2d 207, 209 (10th Cir.1983). It is not that. There can be occasions where a trial was infected with a fundamental unfairness that would not meet federal due process standards. By fundamental unfairness, we do not mean that the whole trial was fundamentally unfair. Such a conclusion would, of course, invoke the due process clause. What we do mean is an unfairness that is short of due process that nevertheless raises a fair question as to whether a new trial should be granted.

first issue and may not again be litigated under a different guise.

■■■ The third issue, however, was not previously raised or resolved in the first habeas adjudication. Hurst's raising the issue now indicates no intent to delay or abuse the writ. That issue is whether Hurst could lawfully plead guilty to a crime he factually did not commit to avoid risking conviction on another more serious charge. If not, it follows that his sentence is unlawful.[11] Typically, habeas courts have shown special sensitivity to allegations involving unlawful sentences. *See, e.g., Rammell,* 560 P.2d 1108; *Mulliner v. Dalton,* 101 Utah 51, 117 P.2d 819 (1941); *Lee Lim,* 75 Utah 245, 284 P. 323; *Frankey v. Patten,* 75 Utah 231, 284 P. 318 (1929); *Rasmussen v. Zundel,* 67 Utah 456, 248 P. 135 (1926).

We refer again to Hurst's claim that he should have been sentenced for a second degree felony because that claim is helpful background to the claim that the plaintiff was unlawfully sentenced for a crime he could not have been convicted of if tried.

Hurst's plea was entered with knowledge of its legal consequences. Although the amended information misnamed the offense to which Hurst pleaded, the information clearly indicated that the offense alleged a first degree felony punishable by incarceration for a minimum mandatory term. The information also alleged the requisite aggravating circumstance. A plea document used at Hurst's arraignment which he initialed in several places and signed reflects the nature of the plea negotiation that occurred. That document was executed the same day Hurst pleaded guilty, and it states in two places that Hurst would plead guilty to the offense of "aggravated sexual abuse of a child," a "first degree felony," and the punishment affixed by statute for that offense is also clearly stated.

Hurst asserts that he did not occupy a position of "special trust" with respect to the victim, and therefore there was no aggravating circumstance which elevated his

offense from sexual abuse of a child to aggravated sexual abuse of a child, and it appears that Hurst did not, in fact, occupy a position of special trust in relation to the victim, as defined by the statute. Nevertheless, it does not follow that he is entitled to a lesser sentence or to withdraw his plea.

A number of jurisdictions have held that an accused can lawfully plead guilty to an offense for which he could not have been convicted if the plea is in exchange for a lesser sentence. *In re Barr,* 102 Wash.2d 265, 269–70, 684 P.2d 712, 715 (1984). *But see In re Hews,* 108 Wash.2d 579, 589–95, 741 P.2d 983, 988–91 (1987). That rule, however, is generally limited in its application to cases where the offense pleaded to is so related to the crime originally charged that an examination of the accused's record would not be misleading as to the nature of the accused's criminal conduct. *People v. Jackson,* 37 Cal.3d 826, 836, 694 P.2d 736, 742, 210 Cal.Rptr. 623, 629 (1985), *overruled on other grounds by People v. Guerrero,* 44 Cal.3d 343, 748 P.2d 1150, 243 Cal.Rptr. 688 (1988); *People v. West,* 3 Cal.3d 595, 613, 477 P.2d 409, 420, 91 Cal. Rptr. 385, 396 (1970); *People v. Johnson,* 25 Mich.App. 258, 181 N.W.2d 425 (1970). *See generally* ABA Standards for Criminal Justice, *Pleas of Guilty,* Std. 14–3.1(b)(ii), commentary to Std. 14–3.1(b) at 14.72–72 (2d ed. 1980); D. Newman, *Conviction: The Determination of Guilt or Innocence Without Trial,* 99–104 (1966). *Contra State v. Estrada,* 27 Ariz.App. 183, 184, 552 P.2d 772, 773 (1976).

Aggravated sexual abuse of a child is of the same genre of crimes as sodomy on a child and simple sexual abuse of a child, the two crimes with which Hurst was originally charged. Hurst's conviction does not distort the nature of his criminal conduct or create a false impression concerning that conduct. Since Hurst's guilty plea obtained for him a lesser sentence than he could have received had he been convicted of sodomy, Hurst received what he bargained for.

---

**11.** It would also seem to follow that the State would be entitled to refile the sodomy on a child charge if Hurst were allowed to withdraw his plea.

Another issue raised in Hurst's second petition is that he was ineffectively represented by counsel. That issue is simply a restatement of the first issue, which we refuse to address because it was previously litigated on the first petition. That issue may not again be litigated under a different guise. We do not, therefore, address the issue on the merits.

We affirm the denial of the petition.

HOWE, Associate C.J., and DURHAM, J., concur.

HALL, C.J., and ZIMMERMAN, J., concur in the result.