Jon Bryan MONSON, Plaintiff
and Appellant,

v.

STATE of Utah and Hank Galetka,
Warden, Defendants and
Appellees.

No. 960250.

Supreme Court of Utah.

Jan. 30, 1998.

Jon Bryan Monson, Draper, pro se.

Jan Graham, Atty. Gen., Angela Micklos, Asst. Atty. Gen., Salt Lake City, for defendants and appellees.

RUSSON, Justice:

## INTRODUCTION

Jon Bryan Monson appeals the district court's dismissal of his petition for extraordinary relief pursuant to rule 65B of the Utah Rules of Civil Procedure. We affirm.

## BACKGROUND

Monson pleaded guilty to second degree murder in 1985 and was sentenced to five years to life in prison. He did not directly appeal his conviction or sentence. In November 1993, Monson filed a petition for extraordinary relief (his "first petition"), pursuant to rule 65B, seeking collateral review of his conviction and sentence and seeking appropriate relief from the Utah Board of Pardons' November 6, 1992, decision regarding his parole. The district court dismissed the petition, and Monson appealed that dismissal to this court. While that appeal was pending, Monson filed, in December 1995, a pro se petition for extraordinary relief (his "second petition"), which is the subject of this appeal. In his second petition, Monson claimed that (1) the trial court failed to establish a factual basis for his guilty plea during the plea colloquy; (2) his plea was unknowing because he did not understand the elements of the crime; and (3) his counsel was ineffective. The district court dismissed the second petition, holding that it was successive without good cause and therefore barred under rule 65B(b) of the Utah Rules of Civil Procedure. The district court further held that because Monson was at the time appealing to this court the dismissal of

his first petition, Monson had a "plain, speedy and adequate remedy available," and therefore the second petition was premature under rule 65B(a) of the Utah Rules of Civil Procedure. Monson now appeals the dismissal of his second petition to this court.

Subsequent to Monson's filing the current appeal and after all the briefs had been submitted, this court, in December 1996, affirmed the district court's dismissal of every claim in Monson's first petition except a "claim that the Board [of Pardons] failed to provide an explanation of its decision to order restitution," which we remanded for further consideration by the trial court. *Monson v. Carver*, 928 P.2d 1017, 1031 (Utah 1996).

In this appeal, Monson claims that the trial court erred in that (1) his second petition was not successive, and (2) the appeal of the dismissal of his first petition did not afford him a "plain, speedy and adequate remedy" for the claims asserted in his second petition. Because we find that the trial court properly dismissed Monson's second petition on the ground that it was successive, we need not address Monson's second claim of error.

## STANDARD OF REVIEW

"In reviewing an appeal from the dismissal of a petition for a writ of habeas corpus, this court does not defer to the trial court's conclusions of law that underlie the dismissal. 'We review those for correctness.'" *Wright v. Carver*, 886 P.2d 58, 60 (Utah 1994) (quoting *Kelbach v. McCotter*, 872 P.2d 1033, 1035 (Utah 1994)).

## ANALYSIS

The filing of Monson's second petition is governed by Utah Rule of Civil Procedure 65B.[1] Subsection (b)(1) of that rule provides in relevant part: "Any person committed by a court to imprisonment in a state prison ... who asserts that *the commitment resulted from a substantial denial of rights* may petition the court for relief under this paragraph. This paragraph (b) shall govern proceedings

based on claims relating to original commitments. ..." Utah R. Civ. P. 65B(b)(1) (1993) (emphasis added). Subsection (b)(3) then provides in relevant part: "The petition shall set forth *all claims* that the petitioner has *in relation to the legality of the commitment.* Additional claims relating to the legality of the commitment *may not be raised* in subsequent proceedings *except for good cause shown.*" *Id.* at 65B(b)(3) (emphasis added).

Rule 65B(b)(3) clearly bars successive petitions which do not meet the "good cause" exception. In *Hurst v. Cook*, 777 P.2d 1029 (Utah 1989), this court stated that a showing of "good cause" that justifies the filing of a successive claim may be established by showing

(1) the denial of a constitutional right pursuant to new law that is, or might be, retroactive, (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial, (3) the existence of fundamental unfairness in a conviction, (4) the illegality of a sentence, or (5) a claim overlooked in good faith with no intent to delay or abuse the writ.

*Id.* at 1037 (citations omitted). As we have recognized in previous cases, rule 65B was fashioned to prevent abuse of the judicial process by prisoners who "burden the courts and frustrate the ends of justice" by filing multiple habeas petitions for claims which could have been brought in a single petition. *See Wright*, 886 P.2d at 60 (concluding that rule 65B(b)(7) is intended to prevent abuse by prisoners through filing of successive writs); *see also Candelario v. Cook*, 789 P.2d 710, 712 (Utah 1990) ("Rule 65B(i)(2) is designed to prevent successive petitions for a writ based on identical grounds, a potential abuse of the judicial system."); *Hurst*, 777 P.2d at 1036 ("The law can and does protect itself against vexatious and abusive successive petitions for writs.").

■ The case at bar bears semblance to *Andrews v. Shulsen*, 773 P.2d 832 (Utah 1988), wherein we affirmed the dismissal of

---

1. All references herein are to rule 65B as it existed prior to the 1996 amendments to that rule.

the plaintiff's habeas petition because he had not shown "good cause" as to why his claims were not raised on direct appeal or in prior postconviction proceedings. While Monson's first petition alleges multiple causes of action pursuant to rule 65B(b), (c) and (e),[2] only subsection (b) proscribes the filing of successive petitions. Because, pursuant to subsection (e), the bulk of the first petition seeks "appropriate relief from that certain Utah Board of Pardons ... decision of November 6, 1992," we must determine whether, in substance, Monson also challenged the legality of his commitment pursuant to subsection (b). A close examination of the first petition reveals that Monson indeed asserted that his imprisonment violated his right to due process and challenged the legality of his imprisonment. For example, his seventh cause of action states:

> Petitioner asserts that the *indeterminate sentence* leading to his commitment to the Utah State Prison is constitutionally unlawful in that Utah's indeterminate sentencing scheme (*through the process of its application under various Utah laws, rules, policies and practices*) is violative of the Eighth Amendment [Cruel and Unusual Punishment Clause] to the United States Constitution; and also runs afoul of Utah's constitutional protection to due process of law.

Monson further supports his subsection (b) claim in an attached memorandum, wherein he states:

> The thrust of Petitioner's Petition challenges (1) the constitutionality of the application of Utah's indeterminate sentencing scheme; (2) the authority of the Utah Board of Pardons (hereafter "UBOP"); and (3) [specific] violations of both Federal and Utah constitutional law with respect to Petitioner's *original judgment, sentence and commitment which led to his incarceration* at the Utah State Prison, as well as the actions [decisions] of the UBOP regarding its treatment of Petitioner.

(Emphasis added.) Monson then provides specific arguments as to why Utah's indeterminate sentencing scheme is cruel and unusual and therefore unconstitutional. Thus, because Monson in fact challenged the legality of his imprisonment in his first petition, rule 65B(b)'s prohibition on successive petitions applies.

Monson filed his second petition pursuant to rule 65B(b), wherein he again challenges the legality of his commitment. However, Monson has offered no justification as to why he did not raise his second petition claims in his first petition. Although Monson asserts that the judge stated at his December 22, 1994, hearing that the judge believed Monson's trial counsel did not render effective assistance, there is no evidence in the record to support this claim. Clearly, he has not established a showing of "good cause" under any of the five grounds set forth in *Hurst* or on the basis of any other meritable grounds. We therefore conclude that Monson has waived his claims and that his second petition was properly dismissed as successive. As we have previously observed, and as we now hold, raising issues in a subsequent habeas corpus petition that were not but could have been raised in a previous habeas petition constitutes an abuse of the writ and requires dismissal of the petition except where good cause is shown. *See Andrews,* 773 P.2d at 833.

## CONCLUSION

In light of the foregoing, we affirm the district court's dismissal of Monson's second habeas corpus petition.

ZIMMERMAN, C.J., and HOWE, Associate C.J., and DURHAM, J., concur in Justice RUSSON's opinion.

STEWART, J., dissents.

2. Subsection (b) is titled "Wrongful imprisonment"; subsection (c) is titled "Other wrongful restraints on personal liberty"; and subsection (e) is titled "Wrongful use of judicial authority or failure to comply with duty."