2007 UT 3

**Ronnie Lee GARDNER, Petitioner,**

v.

**Hank GALETKA, Warden of the Utah State Prison, Respondent.**

No. 20051029.

Supreme Court of Utah.

Jan. 12, 2007.

Mark L. Shurtleff, Att'y Gen., Thomas B. Brunker, Erin Riley, Asst. Att'ys Gen., Salt Lake City, for respondent.

Andrew Parnes, Ketchum, ID, W. Keith Goody, Alpine, WY, James C. Bradshaw, Salt Lake City, for petitioner.

DURRANT, Justice:

## INTRODUCTION

¶ 1 This case is before us on certification of a question of state law from the United States District Court for the District of Utah. The question to be addressed is the following: "If Mr. Gardner had raised the ineffective assistance of counsel claim at issue in *Gardner v. Galetka*[1] (*"Gardner III"*) in state court in a successive petition in 1990, would the petition have been procedurally barred?"

¶ 2 We hold that, in 1990, Gardner's successive post-conviction claim regarding the ineffective assistance of counsel would have been procedurally barred because it could have been brought in a prior post-conviction proceeding. The "good cause" common law exceptions to the procedural bar that we established in *Hurst v. Cook*[2] were unavailable to Gardner because his successive post-conviction claim is "facially implausible" and therefore would have been summarily dismissed without substantive review on its merits. As a result, Gardner's successive post-conviction petition would have been procedurally barred as a matter of 1990 state law.

## BACKGROUND

¶ 3 This case comes to us on certification of a question of state law to determine whether Gardner may receive substantive review of a successive post-conviction petition for relief. In his successive post-conviction petition, Gardner claims his appellate counsel was ineffective in failing to challenge an erroneous jury instruction given at his trial. We restate here, largely verbatim, the facts that we set forth in *Gardner III*.[3]

¶ 4 In 1985, Gardner was convicted of first-degree murder, attempted first-degree murder, aggravated kidnaping, escape, and possession of a dangerous weapon by an incarcerated person. At the close of evidence, the trial court instructed the jury on the requisite elements of first-degree murder. In its separate mens rea instruction, the trial court misdefined the term "knowingly." In pertinent part, the erroneous jury instruction read as follows:

A person engages in conduct: . . .

2. "Knowingly" when he is aware of the nature of his conduct, *or* the existing circumstances, *or* is aware that his conduct is reasonably certain to cause the result.[4]

¶ 5 We noted in *Gardner III* that the instructional flaw stems from the use of the word "or" instead of "and."[5] As a result, the jury could have convicted Gardner of first-degree murder by finding only that he was aware of the nature of his conduct (firing a loaded handgun into his victim's face from a short distance away) without also determining, as required by law, that he was "reasonably certain" that his actions would cause injury.

¶ 6 Gardner's attorneys did not object to the erroneous instruction at trial. The jury convicted Gardner of first-degree murder and, after a separate penalty hearing, sentenced him to death.

¶ 7 On direct appeal, Gardner raised eighteen challenges to his conviction and sentence, including two claims of instructional error—neither of which pertained to the "knowingly" instruction. We affirmed Gardner's conviction and death sentence.[6] One year later, in 1990, Gardner filed his first post-conviction petition in the district court and alleged sixteen grounds for relief, including ineffective assistance of both trial and appellate counsel. With respect to his ineffective assistance of counsel claims, however, Gardner did not include any challenge to the "knowingly" instruction. Although the district court initially ruled that Gardner was entitled to a new penalty hearing and direct

1. 2004 UT 42, 94 P.3d 263.

2. 777 P.2d 1029 (Utah 1989).

3. 2004 UT 42, ¶¶ 2–6, 94 P.3d 263.

4. *Id.* ¶ 3 (emphasis added).

5. *Id.* ¶ 3 n. 1.

6. *Id.* ¶ 4 (citing *State v. Gardner* (*"Gardner I"*), 789 P.2d 273, 288 (Utah 1989)).

appeal, we reversed and reaffirmed his conviction and capital sentence.[7]

¶ 8 In 1997, Gardner filed a petition for writ of habeas corpus in the federal district court, but omitted for the third time any claim related to the "knowingly" instruction. Finally, in 1999, Gardner first argued that his appellate counsel performed deficiently by failing to challenge the "knowingly" instruction. After accepting written submissions and hearing argument, the federal district court declined to determine whether this new claim was barred under Utah law. Instead, it directed Gardner to file a second post-conviction petition in state court to exhaust the claim, allowed him to amend his habeas corpus petition to include the claim, and agreed to hold that portion of the federal petition in abeyance pending state court resolution of this new post-conviction claim.

¶ 9 Upon the filing of Gardner's second post-conviction petition in state court, the State moved for summary judgment on the ground that the petition was procedurally barred. Specifically, the State argued that the Post–Conviction Remedies Act ("PCRA")[8] precluded Gardner from asserting a new claim of ineffective assistance of counsel because a challenge to the "knowingly" instruction "could have been, but was not, raised in a previous request for post-conviction relief."[9] The district court denied the State's motion, ruling that the PCRA incorporated the pre-Act common law procedural bar rules and that, pursuant to those rules, Gardner had demonstrated sufficient "good cause" to justify substantive review of his claim. The State then moved for summary judgment on the merits. Applying *Strickland v. Washington*,[10] the district court concluded that Gardner could not establish a reasonable probability that, but for his counsel's failure to challenge the erroneous "knowingly" instruction, the outcome on direct appeal would have been different. As such, the district court found that Gardner had not demonstrated prejudice and granted the State's motion for summary judgment.

¶ 10 In 2004, on Gardner's appeal from the district court, we held that Gardner's second post-conviction claim was procedurally barred by the PCRA.[11] Now we are asked to determine whether that same post-conviction claim would have been procedurally barred had it been brought in a successive petition in 1990, before the passage of the PCRA.

## STANDARD OF REVIEW

¶ 11 On certification from the federal district court, we "answer the legal questions presented" without "resolv[ing] the underlying dispute."[12]

## ANALYSIS

¶ 12 In 2004, we held in *Gardner III*[13] that Gardner's successive post-conviction claim was procedurally barred by the PCRA.[14] We also held that Gardner's successive post-conviction claim was barred from receiving review on its merits under our common law framework, which retained its independent constitutional significance even after the PCRA went into effect.[15] We concluded that Gardner's claim was "facially implausible" and therefore declined to reach an analysis under the "good cause" common law exceptions that we established in *Hurst v. Cook*.[16] We must now determine whether we would have arrived at the same holding in 1990. In other words, if Gardner had filed his successive petition in 1990, would we have determined, as we did in 2004, that the *Hurst*

---

**7.** *Id.* ¶ 4 (citing *Gardner v. Holden* ("*Gardner II*"), 888 P.2d 608, 611 (Utah 1994)).

**8.** Utah Code Ann. §§ 78–35a–101 to –106 (2002).

**9.** *Gardner III*, 2004 UT 42, ¶ 6, 94 P.3d 263 (citing Utah Code Ann. § 78–35a–106(1)(d)).

**10.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**11.** *Gardner III*, 2004 UT 42, ¶ 19, 94 P.3d 263 (citing Utah Code Ann. § 78–35a–106(1)(d)).

**12.** *Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, ¶ 1 n. 2, 16 P.3d 533.

**13.** 2004 UT 42, 94 P.3d 263.

**14.** *Id.* ¶ 8.

**15.** *Id.* ¶ 15.

**16.** *Id.* ¶ 16 (citing *Hurst v. Cook*, 777 P.2d 1029 (1989)).

exceptions do not apply to "facially implausible" claims?

■ ¶ 13 We hold that Gardner's successive post-conviction petition would have been procedurally barred as a matter of 1990 state law. In describing the basis for this holding, we will first discuss our decision in *Gardner III* and its application to the question before us. Second, we will discuss our common law procedural bar jurisprudence for successive post-conviction petitions as it existed in 1990. Under the common law, as we emphasized in *Gardner III*, Gardner's successive post-conviction claim would have been summarily dismissed as "facially implausible," and therefore an analysis under the "good cause" common law exceptions would not have been reached.

## I. *GARDNER III*

¶ 14 In *Gardner III,* our 2004 decision, we held that Gardner's claim for ineffective assistance of counsel based on the erroneous "knowingly" jury instruction was procedurally barred as a successive claim by the Post–Conviction Remedies Act.[17] The PCRA bars a successive post-conviction claim that "could have been, but was not, raised in a previous request for post-conviction relief." [18] We noted that Gardner's successive post-conviction petition was filed nearly four years after the PCRA's effective date of July 1, 1996, and therefore the language of the statute controlled.[19] We concluded that Gardner's ineffective assistance of counsel claim for failing to challenge the "knowingly" jury instruction could have been brought in his first post-conviction petition.[20] Thus, Gardner's successive post-conviction claim was procedurally barred by the PCRA from receiving substantive review on its merits.[21]

¶ 15 In *Gardner III,* we discussed the interplay between the PCRA and our common law post-conviction procedural bar jurisprudence. Significantly, we held that Gardner's successive post-conviction claim was barred under both the PCRA and the common law.[22]

### A. The Post–Conviction Remedies Act

¶ 16 In 1996, the legislature enacted the PCRA to "establish[ ] a substantive legal remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies." [23] The Act's plain language "purports to replace our common law post-conviction procedural bar jurisprudence with a statutory restriction on successive claims." [24] The Act's statutory restriction bars a successive post-conviction claim that "could have been, but was not, raised in a previous request for post-conviction relief." [25]

### B. Hurst v. Cook: "Good Cause" Common Law Exceptions

■ ¶ 17 Our common law post-conviction procedural bar jurisprudence uses language similar to the statutory restriction set forth in the PCRA. As a matter of common law, we have held that courts will not review a post-conviction claim of error where the error "is something which is known or should [have been] known to the party at· the time the judgment was entered" and therefore could have been raised at an earlier time.[26] Nevertheless, in our common law we created exceptions to this general rule, stating that "the law should not be so blind and unreasoning that where an injustice has resulted the [petitioner] should be without remedy." [27] "[I]t has long been our law[ ] that a procedural default is not always determinative of a

17. *Id.* ¶ 19.

18. Utah Code Ann. § 78–35a–106(1)(d) (2002).

19. *Gardner III,* 2004 UT 42, ¶ 13, 94 P.3d 263.

20. *Id.* ¶ 19.

21. *Id.* ¶ 13.

22. *Id.* ¶¶ 13, 16.

23. Utah Code Ann. § 78–35a–102(1) (2002).

24. *Gardner III,* 2004 UT 42, ¶ 9, 94 P.3d 263 (citing Utah Code Ann. § 78–35a–106).

25. *See* Utah Code Ann. § 78–35a–106(1)(d).

26. *Brown v. Turner,* 21 Utah 2d 96, 440 P.2d 968, 969 (1968).

27. *Martinez v. Smith,* 602 P.2d 700, 702 (Utah 1979).

collateral attack on a conviction where it is alleged that the trial was not conducted within the bounds of basic fairness or in harmony with constitutional standards." [28] Therefore, even where a claim of error could have been raised earlier, post-conviction relief may be available in those "rare cases" [29] or "unusual circumstances" where "an obvious injustice or a substantial and prejudicial denial of a constitutional right has occurred" that would make it "unconscionable" not to reexamine the issue. [30]

¶ 18 Additionally, rule 65B(i)(4) of the Utah Rules of Civil Procedure, in effect until 1991, provided that all post-conviction claims "shall be raised in the post-conviction proceeding brought under this rule and may not be raised in another subsequent proceeding except for good cause shown therein." [31] Rule 65B(i)(4) did not state what constituted "good cause" in this context. In our 1989 *Hurst v. Cook*[32] decision, we established five "good cause" exceptions pursuant to which a successive post-conviction claim may receive review on its merits:

> A showing of good cause that justifies the filing of a successive [post-conviction] claim may be established by showing (1) the denial of a constitutional right pursuant to new law that is, or might be, retroactive, (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial, (3) the existence of fundamental unfairness in a conviction, ... (4) the illegality of a sentence, or (5) a claim overlooked in good faith with no intent to delay or abuse the writ. [33]

We later clarified that this list of "good cause" exceptions is not exhaustive. [34]

¶ 19 In *Gardner III*, we stated that

> [w]ith the 1996 passage of the PCRA, only two of the five "good cause" factors enumerated in *Hurst* remain uncodified. The Act impliedly includes the first *Hurst* factor, "the denial of a constitutional right pursuant to [retroactive] new law," since a claim predicated on fresh jurisprudence could clearly not have been raised in a prior post-conviction petition. Likewise, the Act also provides for relief on the basis of "newly discovered evidence," thereby incorporating the second *Hurst* factor. Finally, the fourth *Hurst* factor is codified in Utah Rule of Criminal Procedure 22(e), which empowers the court to "correct an illegal sentence or a sentence imposed in an illegal manner, at any time." Consequently, the only *Hurst* ... exceptions that have not been addressed by the legislature are "the existence of fundamental unfairness in a conviction" and "a claim overlooked in good faith with no intent to delay or abuse the writ." [35]

▇ ¶ 20 Despite the statutory enactment of three of the *Hurst* factors, however, we emphasized that "all five common law exceptions retain their independent constitutional significance and may be examined by this court in our review of post-conviction petitions." [36] We stated, "While we do not disagree with the legislature's enactment of the PCRA—which of course, embodies the popular will—and generally afford deference to its decisions, we nevertheless will continue to exercise our constitutionally vested authority

**28.** *Hurst v. Cook*, 777 P.2d 1029, 1036 (Utah 1989).

**29.** *Martinez*, 602 P.2d at 702.

**30.** *Hurst*, 777 P.2d at 1035.

**31.** Utah R. Civ. P. 65B(i)(4) (1989) (repealed 1991). The rules regarding post-conviction relief have since been substantially amended and reordered; however, the substance of this rule remains the same. *See* Utah R. Civ. P. 65C(c) ("The petition shall set forth all claims that the petitioner has in relation to the legality of the conviction or sentence. Additional claims relat-

ing to the legality of the conviction or sentence may not be raised in subsequent proceedings except for good cause shown.").

**32.** 777 P.2d 1029 (Utah 1989).

**33.** *Id.* at 1037 (citations omitted).

**34.** *Candelario v. Cook*, 789 P.2d 710, 712 (Utah 1990).

**35.** *Gardner III*, 2004 UT 42, ¶ 14, 94 P.3d 263 (citations omitted) (alteration in original).

**36.** *Id.* ¶ 15.

where appropriate."[37] We noted that "the power to review post-conviction petitions 'quintessentially ... belongs to the judicial branch of government' pursuant to article VIII of the Utah Constitution."[38] As such, "the legislature may not impose restrictions which limit [post-conviction relief] as a judicial rule of procedure, except as provided in the constitution."[39] We concluded, "Our state constitution is designed to prevent the unlawful, improper incarceration or execution of innocent individuals, and for that reason, we uphold the viability of the *Hurst* 'good cause' exceptions."[40] As a result, it is possible for a successive post-conviction claim to be procedurally barred under the PCRA and yet receive substantive review on its merits under our independent "good cause" common law exceptions.

### C. Gardner's Successive Post–Conviction Claim Is "Facially Implausible"

¶ 21 In *Gardner III*, we did not review Gardner's successive post-conviction claim, the same claim at issue before us now, under the "good cause" common law exceptions. We declined to reach this analysis because we held that Gardner's successive post-conviction claim was "facially implausible."[41] We held that "[i]n order to reach analysis under the *Hurst* factors, a claim must be facially plausible. Gardner's [claim] is not, so we do not reach such an analysis."[42] We stated that "[i]t is absurd to suggest that any reasonable juror could find that Gardner was aware that he was firing a loaded handgun into his victim's face from a short distance away, but was not reasonably certain that his action would cause death."[43] We noted ex-

plicitly that we were determining the case solely on a procedural basis and were not reaching the merits of Gardner's claim.[44] In other words, determining that Gardner's successive post-conviction claim was "facially implausible" was not a substantive merits review, but rather a procedural inquiry that we conducted before reaching consideration under the "good cause" common law exceptions.

¶ 22 In *Gardner III*, we left open the question of whether Gardner's successive post-conviction petition would have been procedurally barred in 1990, before the PCRA was enacted.[45] We must now determine whether, under the common law in 1990, we would have arrived at the same conclusion that we did in 2004—declining to reach analysis under the "good cause" common law exceptions because Gardner's claim is "facially implausible." We conclude that this is exactly what we would have done. We will now discuss our common law procedural bar jurisprudence as it existed in 1990 and illustrate its application to Gardner's successive post-conviction claim.

### II. THE COMMON LAW IN 1990

¶ 23 In 1990, before the PCRA was enacted, our common law procedural bar jurisprudence governed whether a successive post-conviction petition would receive substantive review on its merits. Just as the PCRA does now, the common law barred a successive post-conviction claim "when the claim could have been raised in a prior post-conviction proceeding."[46]

¶ 24 It is clear that Gardner's successive post-conviction claim regarding the ineffective assistance of counsel could have been

---

**37.** *Id.* ¶ 18.

**38.** *Id.* ¶ 17 (quoting *Hurst v. Cook,* 777 P.2d 1029, 1033 (Utah 1989)); *see* Utah Const. art. VIII, § 3 ("The Supreme Court shall have original jurisdiction to issue all extraordinary writs and ... power to issue all writs and orders necessary for the exercise of the Supreme Court's jurisdiction or the complete determination of any cause.").

**39.** *Gardner III,* 2004 UT 42, ¶ 17, 94 P.3d 263 (citing *Julian v. State,* 966 P.2d 249, 253 (Utah 1998)(alteration in original)).

**40.** *Id.* ¶ 18.

**41.** *Id.* ¶ 16.

**42.** *Id.*

**43.** *Id.*

**44.** *Id.* ¶ 13 n. 3.

**45.** *Gardner III,* 2004 UT 42, ¶ 13 n. 4, 94 P.3d 263.

**46.** *Tillman v. State,* 2005 UT 56, ¶ 20, 128 P.3d 1123 (citing *Hurst v. Cook,* 777 P.2d 1029, 1033 (Utah 1989)).

raised in a prior post-conviction proceeding and therefore would have been procedurally barred under the common law in 1990. We must now determine whether, in 1990, *Hurst's* "good cause" common law exceptions would have applied to Gardner's successive post-conviction claim. In other words, would we have declined in 1990 to reach a "good cause" analysis because Gardner's claim is facially implausible? We conclude that, in 1990, just as in 2004, we required a threshold showing of non-frivolousness for successive post-conviction claims before we would reach analysis under the *Hurst* "good cause" common law exceptions. Therefore, in 1990, just as in *Gardner III* in 2004, we would have declined to reach analysis under the "good cause" common law exceptions because Gardner's successive post-conviction claim is facially implausible.[47] As a result, Gardner's claim would have been procedurally barred.

¶ 25 A successive post-conviction claim that is "facially implausible" or, in other words, "frivolous" does not warrant consideration under the "good cause" common law exceptions. This procedural requirement is consistent with the exceptions that we established in *Hurst*. There is no "good cause" that justifies bringing before a court a frivolous post-conviction claim. Indeed, there is no "fundamental unfairness" in dismissing a frivolous claim. Additionally, *Hurst's* "overlooked in good faith" factor has no reasonable application because any frivolous claim could be said to be overlooked in good faith. There is an infinite universe of frivolous claims that could be brought in successive post-conviction petitions were the "overlooked in good faith" exception to apply to frivolous claims. The "overlooked in good faith" factor does not contemplate this implausible application.

¶ 26 Moreover, in *Hurst* itself, we explicitly stated that "[f]rivolous claims, once-litigated claims with no showing of 'unusual circum-stances' or 'good cause,' and claims that are withheld for tactical reasons should be summarily denied."[48] This language imposes a separate and distinct procedural determination for successive post-conviction claims that is made before we reach an analysis under the "good cause" common law exceptions. In *Gardner III*, we simply applied this same procedural determination, holding that Gardner's successive post-conviction claim was "facially implausible" or, in other words, "frivolous."[49] As a result, in *Gardner III* we declined to reach a discussion of the "good cause" common law exceptions.[50]

¶ 27 Furthermore, if frivolous, successive post-conviction claims were not subject to summary dismissal, petitioners would almost always receive merits review of their frivolous claims. Without summary dismissal, analysis under the "good cause" common law exceptions would effectively eliminate any procedural bar, taking the teeth out of both the PCRA procedural bar and the common law exceptions to that bar, which survived the PCRA. First, petitioners' claims would always reach initial analysis under the "good cause" common law exceptions. Second, if *Hurst's* "overlooked in good-faith" factor has application even to frivolous claims, then petitioners would easily get past the procedural bar and receive review on the merits of their claims. As stated above, almost by definition a frivolous claim will be "overlooked in good faith," and therefore petitioners could channel their frivolous claims through this particular *Hurst* exception and sidestep both the statutory and common law procedural bar. Our independent common law review of successive post-conviction claims does not allow for such an implausible result.

¶ 28 We also note that the Utah Rules of Civil Procedure were amended in 1991, after *Hurst*, to explicitly include frivolousness as a basis for dismissing successive post-conviction claims.[51] Adopting summary dismissal of frivolous claims into the rules of civil procedure was consistent with our decision in

---

47. *See Gardner III*, 2004 UT 42, ¶ 16, 94 P.3d 263.

48. *Hurst*, 777 P.2d at 1037.

49. *Gardner III*, 2004 UT 42, ¶ 16, 94 P.3d 263.

50. *Id.*

51. *See* Utah R. Civ. P. 65B(c)(4) (1992). The rule, which has since been renumbered in Rule 65C, now states as follows:

The assigned judge shall review the petition, and, if it is apparent to the court that any claim has been adjudicated in a prior proceeding, or if any claim in the petition appears frivolous on its face, the court shall forthwith

*Hurst,* and we have since discussed this standard in a number of cases.[52] Thus, in *Gardner III,* we were not placing a new common law procedural hurdle before the "good cause" exceptions, but rather we were simply reiterating what *Hurst* itself had held regarding the summary dismissal of frivolous claims. Moreover, summary dismissal of frivolous claims in 1990 was entirely consistent with the *Hurst* exceptions themselves and our overall common law post-conviction procedural bar jurisprudence.

¶ 29 The bottom line is this—the *Hurst* exceptions to the procedural bar of successive claims are not available as to frivolous claims. This was true in 1990, just as it was in 2004. The intervening PCRA did not effect this initial procedural hurdle in any manner, because our common law post-conviction procedural bar jurisprudence has retained its independent constitutional significance.

## CONCLUSION

¶ 30 If Mr. Gardner had raised the ineffective assistance of counsel claim at issue in

*Gardner v. Galetka*[53] ("*Gardner III*") in state court in a successive post-conviction petition in 1990, the claim would have been procedurally barred as a matter of state law because it could have been brought in a prior post-conviction proceeding. Additionally, the "good cause" common law exceptions to the procedural bar that we established in *Hurst v. Cook*[54] were unavailable to Gardner because his successive post-conviction claim is "facially implausible."

¶ 31 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

issue an order dismissing the claim, stating either that the claim has been adjudicated or that the claim is frivolous on its face. Utah R. Civ. P. 65C(g)(1).

52. *See, e.g., Adams v. State,* 2005 UT 62, ¶ 19, 123 P.3d 400; *Hutchings v. State,* 2003 UT 52, ¶ 14, 84 P.3d 1150.

53. 2004 UT 42, 94 P.3d 263.

54. 777 P.2d 1029 (Utah 1989).