STATE of Utah, Plaintiff and Appellee,

v.

James LAMPER, Defendant
and Appellant.

No. 870177.

Supreme Court of Utah.

Sept. 1, 1989.

**7.** Majority at 1122.

**8.** *Id.*

Alan K. Jeppesen, Tooele, for defendant and appellant.

David L. Wilkinson and Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant James Lamper was convicted of sodomy on a child, a first degree felony, and sexual abuse of a child, a second degree felony. Utah Code Ann. §§ 76–5–403.1, 76–5–404.1 (Supp.1989). He was sentenced to a minimum mandatory term of ten years on the first count and a concurrent term of one to fifteen years on the second. Lamper appeals on two grounds. First, he claims that the trial court erred in admitting into evidence a videotaped interview of the child victim without first making specific findings regarding the reliability and trustworthiness of the child's out-of-court statements, as required by section 76–5–411 of the Code and *State v. Nelson*, 725 P.2d 1353, 1356 n. 3 (Utah 1986). Second, Lamper argues that if the videotaped interview is excluded from evidence, what remains is insufficient to support a conviction. We agree with Lamper's first contention but conclude that the error was harmless. His convictions are affirmed.

On February 15, 1986, James Lamper took care of his three-year-old niece, the alleged victim, and her two-year-old brother while their mother, Lamper's sister, sought medical care at a local hospital. During the afternoon, the three-year-old girl's babysitter, LaRue, LaRue's mother and brother, and LaRue's friend, Tina, picked up the three-year-old to spend the night at Tina's house, as prearranged. Some two hours later, the three-year-old told LaRue and Tina that her "peepee" hurt and that "Jim" had "put his finger in her peepee and his tail in her bum." In response to questions from the two girls, the victim said that "Jim" was "Jim Lamper." LaRue and Tina inspected the victim's vaginal area and found that it was red and that "white stuff" was coming out of the vaginal orifice.

The following morning, LaRue telephoned her mother and told her what the three-year-old had said. LaRue's mother had her call an older sister, who picked the three girls up and took them to her home. From there, LaRue called the police. Officers took the three-year-old to Tooele Valley Hospital, where she was examined by Dr. Nichol, an emergency room physician, at approximately 2:00 p.m. on February 16th, some twenty hours after the first allegations of abuse. Dr. Nichol found the introitus and the perianal areas to be red and sore and also found the muscle tone of the anus to be diminished. On the basis of these findings, he concluded that she had suffered some form of abuse. A second exam, conducted four days later at the request of the police department, revealed no signs of abuse.

On February 19, 1986, Nancy Fieldman, a social worker from the Division of Family Services, took the victim to the Tooele Police Department for an interview. That interview was videotaped. During the interview, the three-year-old told Fieldman, Sergeant Sutherland, and Lieutenant Scharmann essentially the same story she had told the babysitter: to wit, Lamper "had stuck his tail in [her] bum and his finger in [her] peepee." Later that day, Fieldman met with the victim and the victim's mother and father. During that meeting, the girl told essentially the same story. Charges were then filed against Lamper.

In June of 1986, the prosecutor made a pretrial motion to have the videotape ruled admissible under section 77–35–15.5(1) of the Code.[1] Judge Rokich was sitting in Tooele at the time. A hearing was held over parts of two days during which the judge viewed the videotape and heard testimony from four witnesses, including Detective Sutherland and Ms. Fieldman, both of whom had been present at the interview. Defense counsel cross-examined some of the witnesses at this hearing. Judge Rokich then entered a minute order holding the tape admissible.

In January of 1987, when the case came on for trial, Judge Baldwin was sitting in Tooele. Lamper's counsel made a motion to have Judge Baldwin consider anew the admissibility of the videotape. Counsel contended that under our decision in *State v. Nelson*, 725 P.2d 1353 (Utah 1986), handed down in September of 1986, two months after Judge Rokich's initial ruling, the admissibility of any out-of-court statements by child victims of sexual abuse must be determined under section 76–5–411[2] and that in making such a determination, the trial court must enter findings and conclusions explaining in detail its analysis of the reliability and trustworthiness of the statements. Since Judge Rokich analyzed the admissibility of the videotape only under section 77–35–15.5, defense counsel contended that *Nelson* had not been satisfied and the issue should be revisited. Judge Baldwin reviewed the record and heard from counsel on the issue, ultimately concluding that he was bound by Judge Rokich's earlier ruling because it was the law of the case.

At trial, the victim testified. Her testimony was confused. She seemed to acknowledge that someone named Paul

---

1. Section 77–35–15.5(1) states that in a child abuse or child sexual abuse prosecution, the recorded oral statement of an alleged victim or witness younger than fourteen years of age may be admissible as evidence if all of the following conditions are met:

   (a) no attorney for either party is in the child's presence when the statement is recorded;

   (b) the recording is visual and aural and is recorded on film or videotape or by other electronic means;

   (c) the recording equipment is capable of making an accurate recording, the operator of the equipment is competent, and the recording is accurate and has not been altered;

   (d) each voice in the recording is identified;

   (e) the person conducting the interview of the child in the recording is present at the proceeding and is available to testify and be cross-examined by either party;

   (f) the defendant and his attorney are provided an opportunity to view the recording before it is shown to the court or jury;

   (g) the court views the recording before it is shown to the jury and determines that it is sufficiently reliable and trustworthy and that the interest of justice will best be served by admission of the statement into evidence; and

   (h) the child is available to testify and to be cross examined at trial, either in person or as provided by Subsection (2) or (3), or the court determines that the child is unavailable as a witness to testify at trial under the Utah Rules of Evidence. For purposes of this subsection "unavailable" includes a determination, based on medical or psychological evidence or expert testimony, that the child would suffer serious emotional or mental strain if required to testify at trial.
   Utah Code Ann. § 77–35–15.5(1) (Supp.1989) (repealed effective July 1, 1990).

2. Section 76–5–411 states:

   (1) Notwithstanding any rule of evidence, a child victim's out of court statement regarding sexual abuse of that child is admissible as evidence though it does not qualify under an existing hearsay exception, if:

   (a) the child is available to testify in court or as provided by Subsection 77–35–15.5(2) or (3);

   (b) in the event the child is not available to testify in court or as provided by Subsection 77–35–15.5(2) or (3), there is other corroborative evidence of the abuse; or

   (c) the statement qualfies for admission under Subsection 77–35–15.5(1).

   (2) Prior to admission of any statement into evidence under this section, the judge shall determine whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the reliability of the assertion and of the child.

   (3) A statement admitted under this section shall be made available to the adverse party sufficiently in advance of the trial or proceeding, to provide him [or her] with an opportunity to prepare to meet it.

   (4) For purposes of this section, a child is a person under the age of 14 years.
   Utah Code Ann. § 76–5–411 (Supp.1989) (amended effective July 1, 1990).

Tassehous had sexually abused her, but she denied that this person was Lamper, and she specifically denied telling anyone that Lamper had abused her.[3] The videotape was then shown to the jury. In this videotape, the alleged victim testified to sexual abuse by Lamper in terms consistent with the statements made to the babysitter and her friend.[4] The babysitter, LaRue, her friend, Tina, Sergeant Sutherland, and Nancy Fieldman all testified to their observations and to the statements made to them by the victim. The two doctors who examined the girl also testified to the results of those examinations.

Lamper took the stand and denied the abuse. His defense focused on the testimony of the second doctor, who found no indication of abuse four days after the reported incident, and on testimony by a clinical psychologist specializing in sex abuse treatment that Lamper "is not an incest offender as far as his psychological and test patterns suggest."[5] The jury found him guilty on both counts. He was sentenced to a minimum mandatory term of ten years on one count and a concurrent term of one to fifteen years on the second.

On appeal, Lamper's first argument is that the trial court erred when it admitted the victim's videotaped interview into evidence without first making the determination required by section 76-5-411(2) that "the interest of justice will best be served by the admission" of the out-of-court statements and without making the detailed findings and conclusions in support of that conclusion, as required by *State v. Nelson*. His second claim is that absent the videotape testimony, the evidence was insufficient to convict him. Although we find the judge erred in not making the findings required under section 76-5-411(2) of the Code and *Nelson*, we conclude the error was harmless.

We think the critical issue here is properly framed in a slightly different fashion than Lamper has put it. It is true that Judge Baldwin declined to consider the admissibility of the videotape under 76-5-411 and that he declined to make the findings required by *Nelson*. However, this decision was not based on his conclusion that *Nelson* or section 76-5-411 did not apply; rather, he thought that Judge Rokich's earlier ruling on the admissibility of the videotape was the law of the case and that he was precluded from reconsidering it. Judge Baldwin acknowledged that he thought the requirements of *Nelson* were sound; he simply felt bound by the earlier

---

**3.** The trial transcript reads in part:

Q. Did your Uncle Jimmy ever put his finger in your peepee?
A. No way.
Q. Did he ever put anything in your bumbum?
A. No way. Nobody else talked to me.
Q. ... did you ever tell somebody that he did?
A. No way.
Q. Do you remember talking to Nancy [Fieldman]?
A. Yeah, Hmm. Yep. Yep. Yep.
Q. When you talked to Nancy who were you talking about when you said that they put their finger in your bumbum?
A. I don't know. I don't know.
Q. Was it Uncle Jimmy?
A. No way. It was other Uncle Jimmy. My Uncle Jimmy doesn't have any hair.

**4.** A transcription of the relevant portion of the videotape is as follows:

Q. ... do you remember when you were talking to Tina and LaRue about your Uncle Jim?
A. [Nods yes].
Q. Can you tell me what you told them?
A. [Unintelligible].
Q. Jim did what?
A. Jim stuck my—stuck his tail in my peepee.
Q. He stuck his tail in your peepee?
A. Uh huh—No, he stuck his finger in it—in my tail.
Q. He stuck his finger in your tail? What is your tail?
A. No, in my peepee.
Q. In your peepee. OK, he stuck his finger in your peepee. Is that what you said?
A. [Nods yes].
. . . .
Q. You stated that Jim had stuck his finger in your peepee—right? Did he do anything else to you down around your body?
A. He stuck his tail in my bum.
Q. He stuck his what in your bum?
A. Jim's tail.

**5.** We have no occasion to review the propriety of this testimony. *See State v. Miller*, 709 P.2d 350, 353 (Utah 1985) (such testimony held properly excluded); *cf. State v. Rimmasch*, 775 P.2d 388 (Utah 1989).

ruling. Therefore, the question for review is whether Judge Baldwin erred in declining to reconsider Judge Rokich's ruling.

The general rule is that one judge may not redetermine a previous ruling made by another judge in the same case. *E.g., Sittner v. Big Horn Tar Sands & Oil, Inc.,* 692 P.2d 735, 736 (Utah 1984); *Salt Lake City Corp. v. James Constructors, Inc.,* 761 P.2d 42, 44–45 (Utah Ct.App. 1988). However, if relevant circumstances change in the intervening period, the second judge may then reexamine the earlier ruling. 692 P.2d at 736. Such a change of circumstances includes a change in the governing law. *See Paulson v. Lee,* 745 P.2d 359, 360 (Mont.1987); *State v. Scott,* 68 Or.App. 386, 681 P.2d 1188, 1190–91 (1984); Vestal, *Law of the Case: Single–Suit Preclusion,* 1967 Utah L.Rev. 1. In the present case, *Nelson* did clarify and change the governing law. After *Nelson,* it was clear that a trial court faced with the admissibility of out-of-court statements by an alleged victim of child sexual abuse must determine the admissibility of that evidence under section 76–5–411 and, in making that determination, must enter express findings and conclusions explaining why it finds that "the interest of justice will best be served by admission of that statement." Utah Code Ann. § 76–5–411(2) (Supp.1989) (amended effective July 1, 1990); *see State v. Nelson,* 725 P.2d at 1356 n. 3. Such findings are to focus on the trustworthiness and reliability of the out-of-court statements. 725 P.2d at 1356 n. 3.

The State agrees that the trial judge should have made the reliability and trustworthiness findings required by *Nelson.* However, it argues that the lack of such findings did not result in harmful error because the judge made assessments of the trustworthiness and reliability of the taped interview under section 77–35–15.5(1) and determined it to be trustworthy.

The standard for determining whether an error is harmful is well settled. *State v.*

*Rimmasch,* 775 P.2d at 407; *State v. Verde,* 770 P.2d 116, 122 (Utah 1989); *State v. Bell,* 770 P.2d 100, 106 (Utah 1988); *State v. Hackford,* 737 P.2d 200, 204 n. 1 (Utah 1987); *State v. Knight,* 734 P.2d 913, 919–20 (Utah 1987). An error is harmful when there is a reasonable probability that absent the error, the outcome would have been more favorable for the defendant. In other words, "the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight,* 734 P.2d at 920. We cannot say that had the trial judge made the required inquiry under section 76–5–411 and made the *Nelson* findings, the outcome likely would have been different.

It is true that Judge Rokich did not consider the requirement of section 76–5–411(2) that "the interest of justice will best be served by admission of that [out-of-court] statement." However, he did consider the analogous, if not identical, requirement of section 77–35–15.5(1)(g) that the videotape not be admitted unless the court determines that the recording is "sufficiently reliable and trustworthy and that the interest of justice will best be served by admission of the statement into evidence." During the two-day hearing on the State's motion to admit the videotape, Judge Rokich heard evidence on the question and defense counsel had an opportunity to examine the witnesses and call his own. Four witnesses testified, and the court and counsel viewed the tape. At the conclusion of the hearing, the court found the videotape admissible under section 77–35–15.5, thus implicitly finding that it satisfied the requirements of section 76–5–411. Under these circumstances, since Judge Rokich made an inquiry similar to that required by *Nelson,* we conclude that although Judge Baldwin erred in failing to reopen the matter after *Nelson* was decided and make findings required by that decision, we cannot say that the error was harmful.[6]

---

6. Section 76–5–411(1)(c) states as an initial matter, that a child victim's out-of-court statement regarding sexual abuse is admissible if the child is not available to testify and the child's statement qualifies for admission under section 77–

35–15.5(1). Section 76–5–411(2) requires, additionally, an inquiry into the reliability of any statement offered into evidence under this section. This inquiry under subsection (2) is not surplusage, but is a separate and important in-

For the foregoing reasons, we affirm Lamper's convictions.

HALL, C.J., and HOWE, Associate C.J., and STEWART, J., concur.

DURHAM, Justice (concurring in the result):

I join the Court in affirming Lamper's convictions. I write separately because I believe there is a basis for holding that the child victim's videotaped interview was admissible at trial. During oral argument, counsel for the State asserted that the videotape was admissible as non-hearsay under rule 801(d)(1)(A) of the Utah Rules of Evidence. Rule 801(d)(1) provides:

(d) *Statements which are not hearsay.* A statement is not hearsay if:

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (A) inconsistent with his testimony or the witness denies having made the statement or has forgotten, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him. . . .

In the present case, the declarant/victim testified at trial and was subject to cross-examination. During her cross-examination, the victim was asked:

Q. Did your Uncle Jimmy ever put his finger in your peepee?

A. No way.

Q. Did he ever put anything in your bumbum?

A. No way. Nobody else talked to me.

Q. . . ., did you ever tell somebody that he did?

A. No way.

Q. Do you remember talking to Nancy [Fieldman]?

A. Yeah, Hmm. Yep. Yep. Yep.

Q. When you talked to Nancy who were you talking about when you said that they put their finger in your bumbum?

A. I don't know. I don't know.

Q. Was it Uncle Jimmy?

A. No way. It was other Uncle Jimmy. My Uncle Jimmy doesn't have any hair.

In contrast, during her videotaped interview at the Tooele police station, the victim stated:

Q. . . . do you remember when you were talking to Tina and LaRue about your Uncle Jim?

A. [Nods yes.]

Q. Can you tell me what you told them?

A. [Unintelligible].

Q. Jim did what?

A. Jim stuck my—stuck his tail in my peepee.

Q. He stuck his tail in your peepee?

A. Uh huh—No, he stuck his finger in it—in my tail.

Q. He stuck his finger in your tail? What is your tail?

A. No, in my peepee.

Q. In your peepee. OK, he stuck his finger in your peepee. Is that what you said?

A. [Nods yes.]

. . . .

Q. You stated that Jim had stuck his finger in your peepee—right? Did he do anything else to you down around your body?

A. He stuck his tail in my bum.

Q. He stuck his what in your bum?

A. Jim's tail.

The videotape established that the victim made statements prior to trial which were inconsistent with her trial testimony. Because the declarant/victim testified at trial and was subject to cross-examination concerning her inconsistent statements, I be-

quiry. Although normally the trial court must comply with the requirements of both sections 76–5–411 and 77–35–15.5 when considering videotaped out-of-court statements of child vic-

tims of sexual abuse, in this instance the State raises a valid question as to whether harmful error resulted.

lieve that the videotape was admissible as nonhearsay under rule 801(d)(1)(A). If the videotape was admissible as a nonhearsay statement, the reliability and trustworthiness findings required by section 76–5–411 and *State v. Nelson* were unnecessary.[1]

Section 76–5–411 "allows into evidence hearsay statements that would not be admissible in other criminal or civil proceedings." *State v. Loughton,* 747 P.2d 426, 432 (Utah 1987). Before out-of-court statements may be admitted under section 76–5–411, however, trial judges must evaluate the trustworthiness of those statements and enter detailed findings in support of their conclusions. *See State v. Nelson,* 725 P.2d 1353, 1356 n. 3 (Utah 1986).

Section 76–5–411 was enacted in 1983 "as part of a package that made it easier to introduce children's testimony in child sexual abuse cases and that imposed harsher sentences on offenders." *State v. Webb,* 779 P.2d 1108, —— (Utah 1989). The legislature enacted section 76–5–411, as well as other child sexual abuse legislation, in order to assist prosecutors who handle child sexual abuse cases.

Nothing in the language or legislative history of section 76–5–411 indicates a legislative intent that that section's "reliability and trustworthiness" requirements supersede basic evidentiary rules promulgated by this Court. There is even some question regarding the legislature's power to impose evidentiary requirements in the first instance.[2] In any event, it is ironic that this Court now uses a statute intended to facilitate child abuse prosecutions in a fashion which will render inadmissible evidence that would otherwise pass muster under the Rules of Evidence if the statute did not exist. In other words, the analysis undertaken by the majority subjects the prior inconsistent statements of child witnesses to higher admissibility standards than those of adults by resort to a statute intended to enhance the admissibility of such statements. I believe we will have to confront this problem directly in the future.

---

**1.** Section 76–5–411 applies only to hearsay statements which do not qualify for admission under existing hearsay exceptions. *See State v. Loughton,* 747 P.2d 426, 430 (Utah 1987) (section 76–5–411 is an extraordinary rule of evidence which allows "otherwise-inadmissible evidence to be used in trying a person charged with *sexual abuse of a child*").

**2.** Article VIII, section 4 of the Utah Constitution provides: "The supreme court shall adopt rules of procedure and evidence to be used in the courts of the state.... The legislature may amend the rules of procedure and evidence adopted by the supreme court upon a vote of two-thirds of all members of both houses of the legislature."