Larry JULIAN, Plaintiff and Appellee,

v.

STATE of Utah, Defendant
and Appellant.

No. 970163.

Supreme Court of Utah.

Aug. 4, 1998.

J. Thomas Bowen, Jennifer Gowans, Midvale, for plaintiff.

Jan Graham, Att'y Gen., Laura Dupaix, Asst. Att'y Gen., for defendant.

RUSSON, Justice:

## INTRODUCTION

The State appeals from a district court's grant of Larry Julian's petition for extraordinary relief in which Julian challenged his 1987 convictions of two counts of sodomy upon a child, first degree felonies, in violation of Utah Code Ann. § 76–5–403.1. The court vacated his convictions, ruling that errors which Julian alleged took place at trial constituted plain and harmful error. We reverse and remand for further proceedings.

## BACKGROUND

On July 27, 1987, a jury convicted Julian of committing sodomy upon his two daughters, ages eight and ten. The court sentenced Julian to two concurrent prison terms of fifteen years to life. This court affirmed the convictions on direct appeal. *See State v. Julian,* 771 P.2d 1061 (Utah 1989).

On December 18, 1995, Julian filed a petition in the district court for extraordinary relief ("habeas corpus" petition) pursuant to rule 65B of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 65B (1995).[1] In a memorandum supporting his petition, Julian alleged that (1) the trial court[2] committed plain and harmful error by admitting into evidence adult witnesses' testimony regarding the children's out-of-court statements of the alleged sexual abuse without first determining that those statements were reliable, as required by Utah Code Ann. § 76–5–411 (1995); (2) trial counsel were ineffective for failing to object to the unreliable hearsay and for failing to request that the court make reliability findings; and (3) appellate counsel was ineffective for failing to raise the trial court's reversible errors on direct appeal.

On February 12, 1996, the State moved for an extension of time to respond to the petition. The habeas court granted that motion, and the State then filed a timely motion to dismiss the petition on the ground that it was time-barred by Utah Code Ann. § 78–12–25(3) (1992), the four-year limitations provi-

---

1. We note that while our rules of civil procedure set forth the requirements for asserting a petition for extraordinary relief, an extraordinary relief proceeding such as the one in this case is substantively a form of the petition for a writ of habeas corpus and has been referred to as such in many past cases. *See Tillman v. Cook,* 855 P.2d 211, 225 n. 1 (Utah 1993).

We further note that the 1996 amendments to the Utah Rules of Civil Procedure substantially changed rule 65B. One change was the deletion of former subdivision (b), concerning wrongful imprisonment, the provisions of which were transferred to rule 65C. *See* Utah R. Civ. P. 65B, amendment notes.

2. The judge who presided over Julian's habeas petition was the same judge who presided over his trial. To clearly distinguish the district courts involved in this case, we will refer to the court hearing Julian's petition as the "habeas" court and to the court presiding over his trial as the "trial" court.

sion for civil claims not otherwise provided for by law (the "catch-all" statute). According to the State, that statute took effect when the court of appeals declared unconstitutional Utah Code Ann. § 78–12–31.1 (1992) (the former "ninety-day" statute of limitations provision applicable to habeas corpus petitions). *See Currier v. Holden,* 862 P.2d 1357 (Utah Ct.App.1993). After the ninety-day statute was declared unconstitutional, the legislature enacted Utah Code Ann. § 78–35a–107 (1996) (the new "one-year" statute of limitations provision for post-conviction relief), which became effective May 1, 1995, approximately eight months before Julian filed his petition.[3] However, the State asserted that it elected not to invoke the one-year statute because it had adopted a policy of not invoking the new statute to the detriment of a defendant until May 1, 1996, to give defendants an opportunity to learn of the statute before they were penalized by its application.

Julian filed a memorandum in opposition to the State's motion to dismiss, arguing, inter alia, that the catch-all statute could not be constitutionally applied to bar his petition. After considering the parties' memoranda, the habeas court denied the State's motion to dismiss. In a written order dated May 30, 1996, the court ruled that the four-year catch-all statute did not apply to Julian's petition for two reasons. First, the court concluded that the catch-all statute applied only where relief was not otherwise provided for by law and that relief was provided for by the one-year statute in section 78–35a–107. Thus, according to the court, the State's decision not to invoke the appropriate statute of limitations was an attempt to circumvent the intent of the legislature. Second, the court concluded that while the catch-all statute's four-year limitations period was noticeably longer than the period prescribed by the ninety-day statute struck down in *Currier,* it

was equally inflexible. Nevertheless, because the one-year statute applied to Julian's petition, the court declined to reach the issue of whether application of the catch-all statute would be constitutional. The court then considered Julian's petition in light of the one-year statute. While it did not determine whether Julian's petition was filed within the one-year limitations period, the court concluded that even if his petition was untimely, given the gravity of his claims the court would excuse such untimeliness under the "interests of justice" exception of the said statute and consider the merits of the petition.[4]

Thereafter, on July 12, 1996, Julian filed a request for a ruling on his petition, asserting that the State had not filed an answer. However, on August 5, 1996, the State filed a second motion to dismiss the petition, alleging that (1) the trial court was not required to make reliability findings pursuant to section 76–5–411 before admitting the children's out-of-court statements into evidence because those statements were properly admissible under the Utah Rules of Evidence; (2) trial and appellate counsel were not ineffective in failing to raise the section 76–5–411 issue because the children's statements were admissible under evidentiary rules; and (3) even if the trial court should have made reliability findings pursuant to section 76–5–411, its failure to do so did not violate Julian's constitutional rights and was harmless error.

On September 20, 1996, Julian filed a memorandum in opposition to the State's second motion to dismiss. Neither party requested a hearing, but both filed requests for a ruling on the petition. The habeas court did not rule on the State's second motion to dismiss but instead treated it as a response to Julian's petition.

3. Section 78–12–31.1 prescribed a rigid ninety-day limitations period that did not provide for judicial discretion. In section 78–35a–107, the legislature increased the limitations period to one year and also provided that a court may excuse a petitioner's failure to file within the time limitation "if the court finds that the interests of justice require." Utah Code Ann. § 78–35a–107(3) (1996).

4. The one-year statute of limitations was originally codified at Utah Code Ann. § 78–12–31.1 (1995), to which the district court referred in its rulings. That provision was subsequently renumbered as Utah Code Ann. § 78–35a–107 (1996). We cite to the statute at its current location in the Code.

On March 10, 1997, the habeas court issued a written order setting aside Julian's convictions. In the findings of fact and conclusions of law supporting its order, the court made the following legal conclusions: (1) The trial court erred in failing to make reliability findings under section 76–5–411; (2) Julian's trial and appellate counsel failed to provide adequate representation because they did not request reliability findings at trial or raise the reliability issue on appeal; and (3) there was a "reasonable probability that, absent improperly admitted adult testimony, the outcome of the trial would have been different." The court subsequently denied the State's request for a stay of its order pending appeal and released Julian from prison on bond.

On appeal, the State asserts three main arguments to support its claim that the court erred in granting the relief Julian sought in his petition: (1) the petition was time-barred by section 78–12–25(3)'s four-year catch-all statute of limitations period, and the one-year statute could not be applied retroactively to Julian's petition; (2) even if the court correctly applied the one-year statute, it erred in excusing Julian's untimeliness under the statute's "interests of justice" exception; and (3) reliability findings under section 76–5–411 were not required because the challenged testimony was otherwise admissible under the Utah Rules of Evidence; therefore, the court erred in concluding that the lack of reliability findings constituted plain error and that Julian's counsel were ineffective.

Julian, on the other hand, asserts that the four-year catch-all statute may not be constitutionally applied to bar his habeas petition. Furthermore, he maintains his position—as set forth in his petition—that the trial court's failure to make reliability findings pursuant to section 76–5–411 constituted plain and harmful error, violated his substantive rights, and resulted in substantial prejudice and that defense counsels' failure to raise the reliability issue constituted ineffective assistance of counsel. He also asserts, for the first time, that expert testimony regarding the child victims' veracity was prejudicial and constituted plain and reversible error.

## STANDARD OF REVIEW

■ When reviewing an appeal from an order dismissing a petition for extraordinary relief or granting the relief requested in such a petition, we accord no deference to the lower court's conclusions of law but review them for correctness. *See Monson v. Carver,* 928 P.2d 1017, 1022–23 (Utah 1996).

## ANALYSIS

I. THE FOUR–YEAR CATCH–ALL STATUTE OF LIMITATIONS PROVISION—UTAH CODE ANN. § 78–12–25(3)

■ The first issue is whether the four-year catch-all statute of limitations period in section 78–12–25(3) may be applied to bar Julian's petition for extraordinary relief. That section provides that an action may be brought within four years for relief "not otherwise provided for by law." [5] The application of a statute of limitations is a question of law, which we review for correctness. *See Gramlich v. Munsey,* 838 P.2d 1131, 1132 (Utah 1992).

The State's reasoning for applying the catch-all statute may be summarized as follows: When the court of appeals in *Currier* struck section 78–12–31.1 (the ninety-day statute) as unconstitutional, the four-year catch-all statute became applicable to petitions for post-conviction relief. This is so because post-conviction proceedings, including petitions for writs of habeas corpus, are civil actions. *See Andrews v. Morris,* 607 P.2d 816, 822 (Utah 1980). The catch-all's four-year period began to run from the time Julian's cause of action accrued, which was March 28, 1989, the date on which this court affirmed his convictions. *See State v. Julian,* 771 P.2d 1061 (Utah 1989). Because Julian's cause of action expired on March 28, 1993, the one-year statute—which became effective

---

5. The 1996 amendment modified the wording of section 78–12–25 but did not change the substance of the statute.

on May 1, 1995—could not be retroactively applied to his petition. *See Roark v. Crabtree*, 893 P.2d 1058, 1062 (Utah 1995) (holding that once claim has expired under applicable statute of limitations, claim cannot be revived by subsequently enacted statute of limitations).

The habeas court ruled that the catch-all statute did not apply because relief was otherwise provided for by the one-year statute. However, the court's ruling did not consider the State's claim that the catch-all statute had barred Julian's petition before the one-year statute was even enacted. If the State is correct, Julian's allegedly stale claim arguably could not be revived by the one-year statute. We must therefore determine whether the catch-all statute applied to bar Julian's petition.

█ Julian argues on appeal that the catch-all statute cannot be constitutionally applied to bar a habeas corpus petition. We agree. While the State correctly notes that a habeas corpus petition is a civil action, this fact does not undermine the petition's importance of protecting fundamental constitutional rights. This court has referred to the "writ" as "the precious safeguard of personal liberty," *Hurst v. Cook*, 777 P.2d 1029, 1033 (Utah 1989), because it is often the only remedy available to a person who has been imprisoned in violation of due process of law. *See Brown v. Turner*, 21 Utah 2d 96, 440 P.2d 968, 969 (Utah 1968). Moreover, we have recognized that "[q]uintessentially, the Writ belongs to the judicial branch of government" and that "the writ of habeas corpus is one of the most important of all judicial tools for the protection of individual liberty." *Hurst*, 777 P.2d at 1033, 1034. In fact, the Utah Constitution provides, "The privilege of the writ of habeas corpus shall not be suspended, unless, in case of rebellion or invasion, the public safety requires it." Utah Const. art. I, § 5.

Hence, the legislature may not impose restrictions which limit the writ as a judicial rule of procedure, except as provided in the constitution. As we have stated, "[T]he separation of powers provision, Article V, Section 1 of the Utah Constitution, requires, and the Open Courts Provision of the Declaration of Rights, Article I, Section 11, presupposes, a judicial department armed with process sufficient to fulfill its role as the third branch of government." *Hurst*, 777 P.2d at 1033. Thus, in striking section 78–12–31.1 as unconstitutional, the court of appeals aptly noted that the statute "remove[d] flexibility and discretion from state judicial procedure, thereby diminishing the court's ability to guarantee fairness and equity in particular cases." *Currier*, 862 P.2d at 1368 n. 18.

We therefore hold that section 78–12–25(3), the four-year statute of limitations provision, may not be constitutionally applied to bar a habeas corpus petition. As the habeas court correctly noted, although the four-year catch-all statute is noticeably longer than the ninety-day statute struck down by *Currier*, it is equally inflexible. Applying the catchall statute to bar habeas petitions not only violates the Utah Constitution's open courts provision in article I, section 11, but also violates the separation of powers provision in article V, section 1. Hence, the court correctly ruled—albeit on other grounds—that section 78–12–25(3) did not apply to Julian's petition.[6]

## II. THE ONE–YEAR STATUTE'S "INTERESTS OF JUSTICE" EXCEPTION—UTAH CODE ANN. § 78–35a–107(3)

█ The State's second argument is that even if the one-year statute applied, the habeas court erred in excusing the petition's timeliness under the statute's "interests of justice" exception. The one-year statute provides in pertinent part:

(1) A petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued.

. . . .

---

6. We realize that we allowed section 78–12–25(3) to be applied to a habeas petition in *Johnson v. State*, 945 P.2d 673 (Utah 1997). However, the defendant in that case never challenged the con-

stitutionality of the catch-all statute. Thus, in the absence of such a challenge, we upheld the district court's finding that the four-year limitations period applied. 945 P.2d at 676.

(3) If the court finds that the interests of justice require, a court may excuse a petitioner's failure to file within the time limitations.

Utah Code Ann. § 78–35a–107(1) & (3) (1996). Under this statute, the decision whether to excuse an untimely petition pursuant to the "interests of justice" exception is a matter within the court's discretion. The habeas court in the instant action excused the untimely filing of Julian's petition under the exception, and we will reverse that court's decision in this regard only if the court abused its discretion. *See* 39 Am. Jur.2d *Habeas Corpus* § 129 (1968).

The State argues that the habeas court misinterpreted the purpose and meaning of the "interests of justice" exception, which should be read narrowly to apply only under truly exceptional circumstances. According to the State, the purpose of statutes of limitations is to encourage litigants to diligently seek out and file their claims early so as to promote finality and to protect defendants from having to defend stale claims. *See Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1091 (Utah 1989). That policy, the State asserts, is equally important in post-conviction proceedings, in which the State has an interest in keeping persons convicted of serious crimes incarcerated. Thus, the State maintains that allowing attacks on legitimate convictions many years later makes it difficult, if not impossible, for the State to defend against those claims.

■ We fully appreciate the State's concerns. We emphasize, however, that when a court grants relief pursuant to a habeas corpus petition, it does so on the ground that the petitioner has been wrongfully incarcerated. *See* Utah R. Civ. P. 65B & 65C. That is to say, a court should grant relief if the petitioner establishes that he or she has been deprived of due process of law or that "it would be unconscionable not to re-examine the conviction." *Brown*, 440 P.2d at 969. Therefore, if the proper showing is made, the mere passage of time can *never* justify continued imprisonment of one who has been deprived of fundamental rights, regardless of

how difficult it may be for the State to reprosecute that individual.

■ We note that while Julian does not directly challenge the constitutionality of section 78–35a–107 (the one-year statute), he argues that if the State's narrow construction regarding the "interests of justice" exception has any merit, then that statute also unconstitutionally limits habeas corpus actions. Under our reasoning in this case, proper consideration of meritorious claims raised in a habeas corpus petition will *always* be in the interests of justice. It necessarily follows that *no* statute of limitations may be constitutionally applied to bar a habeas petition.

This does not mean that a petitioner has an unconditional right to have his petition considered fully on its merits. It means only that a petitioner has a right to have the claims set forth in his petition reviewed by a judge for determination as to whether the petition warrants further proceedings or whether it should be dismissed for reasons set forth in the Utah Rules of Civil Procedure governing petitions for extraordinary relief. *See* Utah R.Civ.P. 65B(b). If a statute of limitations alone could be applied to dismiss such a petition, a person who has spent years in prison who could show his innocence—e.g., by new DNA evidence or confessions of others—could never be exonerated and obtain freedom from wrongful incarceration.

■ In the case at bar, the habeas court apparently considered Julian's petition because his claims undermined the court's confidence in the trial's outcome. Because there is no evidence to the contrary, we conclude that the court did not abuse its discretion in considering the petition.

## III. SECTION 76–5–411'S RELIABILITY REQUIREMENTS

We turn next to the State's third main issue—whether the habeas court erred in ruling that section 76–5–411 requires a trial court to make reliability findings before it may admit a child victim's out-of-court statements regarding sexual abuse of that child, even if those statements are admissible un-

der some other rule of evidence. The State argues that section 76–5–411's purpose is to make it easier to admit children's testimony in child sexual abuse cases and that the statute does not displace normal rules of evidence but rather acts as a secondary rule that allows the admission of otherwise inadmissible evidence. However, in granting the relief Julian requested, the court stated: "As this Court reads the case law regarding section 76–5–411, it appears that the statute overrides the hearsay rules. In other words, even if statements qualify as a hearsay exception, section 76–5–411 findings must also be made before admission."

■ The habeas court's conclusion that the trial court committed plain and harmful error by failing to make reliability findings pursuant to section 76–5–411 is a legal conclusion, based upon its interpretation of the statute, which we review for correctness. *See State v. Anderson,* 929 P.2d 1107, 1108 (Utah 1996); *Taylor v. Warden,* 905 P.2d 277, 282 (Utah 1995).

We begin our analysis by setting forth the relevant provisions of section 76–5–411:

(1) Notwithstanding any rule of evidence, a child victim's out-of-court statement regarding sexual abuse of that child is admissible as evidence *although it does not qualify under an existing hearsay exception, if:*

(a) the child is available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure;

(b) if the child is not available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure, there is other corroborative evidence of the abuse; or

(c) the statement qualifies for admission under Rule 15.5(1), Utah Rules of Criminal Procedure.

(2) Prior to admission of any statement into evidence *under this section,* the judge shall determine whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the

child to the offender, and the reliability of the assertion and of the child.

Utah Code Ann. § 76–5–411 (1995).

■ The statute's plain language clearly indicates that the statute applies only to a child victim's out-of-court statements that are not otherwise admissible under existing evidentiary rules. Subsection (1) simply states that such statements may be admitted into evidence even though they would not be admissible under an existing hearsay exception, so long as (a), (b), or (c) is satisfied. Subsection (2) adds one more requirement for admissibility under the statute: if the statements are admissible under subsection (1), the court must then determine whether the interest of justice will best be served by admission of the statements. Reason dictates that if the statements are admissible under some other rule of evidence rather than "under this section," then the court need not make the findings required by subsection (2).

Moreover, our case law has consistently recognized that section 76–5–411 applies only when the child victim's statements would be inadmissible under our evidentiary rules. *See, e.g., State v. Eldredge,* 773 P.2d 29, 32 (Utah 1989) ("[S]ection 76–5–411 appears to do no more than allow the admission of *otherwise inadmissible* hearsay statements." (emphasis added)); *State v. Lamper,* 779 P.2d 1125, 1131 n. 1 (Utah 1989) (Durham, J., concurring in the result) ("Section 76–5–411 applies only to hearsay statements which do not qualify for admission *under existing hearsay exceptions.*" (emphasis added)); *State v. Loughton,* 747 P.2d 426, 430 (Utah 1987) (stating that sections 76–5–410 and – 411 are "extraordinary rules of evidence [that] allow *otherwise-inadmissible evidence* to be used in trying a person charged with sexual abuse of a child" (emphasis added)).

We also note that section 76–5–411 appears to have been enacted to facilitate the admission of child victims' out-of-court statements while at the same time satisfying constitutional requirements. Were the statute to apply to otherwise admissible statements, it would effectively create additional burdens, thereby making admission of those statements more difficult. Such a result contra-

venes the statute's plain language as well as other statutory provisions that facilitate the admission of evidence in child sexual abuse cases.

For example, section 76–5–410 provides that a "child victim of sexual abuse under the age of ten is a competent witness and shall be allowed to testify *without prior qualification* in any judicial proceeding. The trier of fact shall determine the weight and credibility of the testimony." Utah Code Ann. § 76–5–410 (1995) (emphasis added). If child victims are competent witnesses, their out-of-court statements that would be admissible under evidentiary rules should not be subject to the additional reliability requirements of section 76–5–411, which are necessary to keep the admission of such statements from violating the confrontation clauses of the state and federal constitutions. *See State v. Nelson*, 725 P.2d 1353, 1355–56 n. 3 (Utah 1986).

As we stated in *Nelson*, the admission of hearsay statements may offend the confrontation clauses unless those statements contain sufficient indicia of reliability, or " 'particularized guarantees of trustworthiness.' " *Id.* (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)); *see also Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Wright*, 497 U.S. at 815, 110 S.Ct. 3139. However, because hearsay statements subject to section 76–5–411 do not fall within firmly rooted hearsay exceptions, the court *must* make findings regarding their reliability for trustworthiness before admitting them into evidence. *See Nelson*, 725 P.2d at 1355–56 n. 3; *State v.*

*Matsamas*, 808 P.2d 1048, 1051 (Utah 1991) ("[O]ur post-*Nelson* decisions [stress] the critical nature of the requirement of findings on reliability.").

In light of the foregoing, we hold that section 76–5–411 does not apply to child victims' out-of-court statements regarding sexual abuse that may be admitted as substantive evidence under existing evidentiary rules. We therefore conclude that the habeas court erred in ruling that section 76–5–411 overrides the hearsay exceptions.[7]

## IV. THE ADMISSIBILITY OF THE CHILDREN'S OUT–OF–COURT STATEMENTS UNDER THE UTAH RULES OF EVIDENCE

Our conclusion above does not end our inquiry, because the habeas court concluded that some of the adult witnesses' testimony regarding the children's out-of-court statements would have qualified for admission under the hearsay exceptions of the Utah Rules of Evidence. However, the parties dispute whether those statements admitted at trial qualified for admission under the hearsay exceptions. We must therefore address whether the statements were admissible and whether the habeas court was correct in so holding.

The State argues that the testimony of Dr. Mary Beard—an obstetrician/gynecologist—regarding the children's out-of-court statements of sexual abuse would have been admissible under rule 803(4) of the Utah Rules of Evidence (the "treating physician" exception).[8] In contrast, Julian asserts that Dr. Beard conducted physical examinations of the children for the purpose of investigating

---

7. We note that our holding uses the term "substantive evidence." We do so because some out-of-court statements may be admissible only for certain limited purposes and not as substantive evidence, which is evidence adduced for the purpose of proving a fact in issue. *See Black's Law Dictionary* 1429 (6th ed.1990). In such instances, section 76–5–411 findings are unnecessary so long as the statements are considered only for the purposes for which they were admitted. If, however, those statements would not be admissible as substantive evidence under existing evidentiary rules and a party wishes to admit them

as such, then the requirements of section 76–5–411 must be met.

8. Rule 803(4) is an exception to the hearsay rule and allows the admission of statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Utah R. Evid. 803(4) (1998). The 1992 amendments to the rules of evidence did not change rule 803(4).

Susan Julian's claim that the children had been sexually abused by their father. Because the children's out-of-court statements were elicited during an interview preceding the physical examination in which Mrs. Julian provided assistance and input, Julian argues that those statements were not spontaneous, were not elicited during the course of diagnosis or treatment, and were not reliable or trustworthy.

The other adult witnesses who testified regarding the children's out-of-court statements of sexual abuse were Susan Julian, Susan Dollarhide (the director of Parents United, who interviewed the children), and Kathryn Patterson (a licensed social worker who interviewed the children). The State argues that their testimony regarding the children's statements did not constitute hearsay as defined by rule 801(d)(1), which allows certain out-of-court statements to be admitted as nonhearsay for the purpose of rehabilitating a witness's credibility.[9] According to the State, defense counsel throughout trial suggested that the children had been improperly influenced by their mother and the two social workers to fabricate their allegations that their father had sexually abused them. Hence, the State argues, it was permitted under rule 801(d)(1) to allow Susan Julian, Susan Dollarhide, and Kathryn Patterson to testify regarding the children's out-of-court statements and the circumstances surrounding those statements.

In contrast, Julian argues that the State should not be allowed to circumvent reliability requirements by applying alternative theories for admission beyond the proximity of the trial court. According to Julian, the State initially applied rule 803(4) to the hearsay testimony of three of the four adult witnesses at trial but takes the position on appeal that all of the challenged testimony was nonhearsay under rule 801(d)(1)(B). However, Julian maintains, such testimony could be considered only for the limited purpose of rehabilitating witness credibility and

the jury was never given a limiting instruction in this regard. *See State v. Speer,* 718 P.2d 383, 385 (Utah 1986) (relying upon trial court's jury instruction that out-of-court statements were admitted for sole purpose of rehabilitating victim's credibility by showing prior consistent statements). Hence, Julian argues that without a limiting jury instruction, the out-of-court statements were presented and received as direct evidence of the truth of the matter asserted.

Given the scant information before us, we have no basis upon which we can determine whether the State or Julian is correct. In granting the relief Julian sought, the habeas court made the following legal conclusions:

2. *Some of the statements* of the adult witnesses would have qualified for admission under the hearsay exception, Rule 803(4), Utah Rules of Evidence [the "treating physician" exception]. Specifically, *certain statements* the victims made to Dr. Beard at their first diagnostic examinations constituted statements made in the course of medical treatment or diagnosis. Additionally, *other statements* witnesses made did not even constitute hearsay as defined under Rule 801, Utah Rules of Evidence.

3. Due to the length of time since the trial, the Court cannot now apply section § [sic] 76-5-411 to all the statements the adult witnesses made; however, in reviewing the requirements of that statute, the Court believes the victims' mother's testimony and statements the victims allegedly made during group therapy would not have met those reliability standards. Therefore, had the statute been applied, they would not have been admitted.

(Emphasis added.) The court's conclusions are mere generalities and do not indicate specifically which statements would have been admissible or inadmissible under our rules of evidence. Presumably, the court did not make specific determinations in this re-

---

**9.** Rule 801(d)(1) provides that a statement is not hearsay if

[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is … (B) consistent with the declarant's testimony and

is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

Utah R. Evid. 801(d)(1) (1998). The 1992 amendments to the rules of evidence changed the wording of rule 801(d)(1) but not its substance.

gard because it concluded that section 76–5–411 overrides the hearsay exceptions. However, because the court did not sufficiently address whether specific statements would have been admissible or inadmissible, we cannot adequately review the court's conclusions regarding the admissibility of those statements. We therefore must remand this case to the habeas court so that it may determine whether the statements Julian challenges were admissible or inadmissible under the rules of evidence. If it determines that the statements were admissible, the court must still determine whether they were admissible as substantive evidence or only for a limited purpose. Finally, if the court concludes that an error occurred regarding admissibility, it must determine whether the error constituted reversible error.

▇ As a final matter, Julian argues that Kathryn Patterson's testimony regarding the veracity of the children's statements violated this court's ruling in *State v. Rimmasch,* 775 P.2d 388, 392 (Utah 1989). However, Julian did not raise this issue in his petition, and the habeas court did not consider it in granting the petition. Julian cites *State v. Brown,* 853 P.2d 851 (Utah 1992), for the proposition that this court may consider issues raised for the first time on appeal if the trial court committed plain error; he also cites *State v. Malmrose,* 649 P.2d 56, 58 (Utah 1982), for the proposition that this court may consider errors which were not objected to at trial if they bear upon a claim of ineffective assistance of counsel. Nevertheless, those cases do not apply to Julian's action. Julian does not assert that the trial court admitted Patterson's testimony regarding the children's veracity in an improper manner—e.g., over defense counsel's objection. Julian argues only that the court *permitted* Kathryn Patterson to testify as to the children's truthfulness. Because the trial court was not required to bar the admission of such testimony absent a proper motion, the court did not commit plain error at trial. Moreover, because Julian did not assert in his petition that trial counsel were ineffective for failing to object to Patterson's testimony or that appellate counsel was ineffective for failing to raise the issue on appeal, we cannot conclude that the alleged error bears upon Julian's claims of ineffectiveness. We therefore follow our longstanding rule that we will not consider issues raised for the first time on appeal. *See Monson v. Carver,* 928 P.2d 1017, 1022 (Utah 1996) (" '[I]ssues not raised at trial cannot be argued for the first time on appeal.' This rule applies to all claims, including constitutional questions, unless the petitioner demonstrates that 'plain error' occurred or 'exceptional circumstances' exist . . . ." (quoting *State v. Lopez,* 886 P.2d 1105, 1113 (Utah 1994))).

## CONCLUSION

The habeas court correctly concluded that section 78–12–25(3) (the four-year catch-all statute) cannot be applied to bar a habeas corpus petition. Moreover, the court acted within its discretion when it concluded that the interests of justice exception in section 78–35a–107(3) (the one-year statute) excused Julian's failure to comply with the one-year limitations period. However, the habeas court erred in concluding that section 78–5–411 overrides the hearsay exceptions and that child victims' out-of-court statements regarding sexual abuse must satisfy the statute's requirements, even though those statements are otherwise admissible under existing evidentiary rules. It necessarily follows that the court could not correctly conclude that trial and appellate counsel were ineffective for failing to raise the section 76–5–411 reliability issue.

Nevertheless, the court also concluded that some of the adult witnesses' testimony regarding the children's out-of-court statements would have been admissible under the hearsay exceptions of the Utah Rules of Evidence. However, because the court had concluded that section 76–5–411 overrides the hearsay exceptions, the court did not determine whether specific statements would be admissible or inadmissible. In the absence of such a determination, we have no basis for reviewing the court's conclusions in this regard.

We therefore reverse the court's order and remand this case to the habeas court for

further proceedings consistent with this opinion.

DURHAM Associate C.J., concurs in Justice RUSSON'S opinion.

HOWE, C.J., concurs in the result.

ZIMMERMAN, Justice, concurring:

I concur in the opinion of Justice Russon. I certainly understand the legislature's expressed concern about what the public perceives as long-delayed habeas proceedings and the endless litigation they seem to produce. While I think this perception of habeas corpus litigation is seriously flawed and does not represent a true picture of the uses to which the writ is usually put by prisoners, the fact remains that this perception is the apparent source of the repeated efforts at both state and national levels to enact strict limitations on post-conviction petitions. However, those who complain of seemingly tardy habeas petitions need to recognize that neither the state nor the national government has done anything of significance to make it possible for even the most conscientious prisoner to discover possibly valid legal claims of error and pursue them competently. In Utah, most minimal legal research materials are lacking at the prison, and the legal services provided to assist the prisoners are grossly inadequate. Under such circumstances, it is a cruel joke to presume as the legislature has that virtually all prisoners are abusing the system when they file habeas petitions more than a year after their conviction.

As I suggested in *Parsons v. Barnes,* 871 P.2d 516, 530–31 (Utah 1994) (Zimmerman, C.J., concurring), the remedy for the real problem that underlies this distorted public perception is not a statute of limitation, but the candid recognition that the initial post-conviction proceeding is really part of the criminal trial and review process and almost essential for proper review of ineffective assistance of counsel claims. As a consequence, the defendant should be provided with paid counsel and one state-financed automatic post-conviction proceeding. If such an approach were adopted, the need for prisoners to file subsequent habeas petitions would certainly decline sharply. And that decline would reduce public and legislative frustration with, and attempts to limit resort to, the Great Writ, one of the cornerstones of Anglo–American jurisprudence and an essential constitutional tool we give every citizen so that they can raise challenges to the lawfulness of their confinements.

STEWART, Justice, concurring:

I concur without reservation in Justice Russon's opinion for the Court and write merely to offer several comments on the views expressed by Justice Zimmerman with respect to several important issues concerning writs of habeas corpus and their place in our law.

Justice Zimmerman refers to the public's perception of "long-delayed habeas proceedings and the endless litigation they seem to produce." I submit there is little evidence of "endless litigation" produced by habeas proceedings under current practice. It is quite true that a decade or more ago when this and other courts were grappling with the highly complex and extremely difficult issues in capital cases that had arisen under United States Supreme Court cases construing the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, there were a number of highly protracted habeas cases. The so-called "Hi-Fi killers" case was the most notable in Utah. In fact, many of the "long-delayed habeas proceedings and the endless litigation they produce[d]" referred to by Justice Zimmerman, occurred as a result of *federal* post-conviction relief law (usually referred to as federal habeas law) that came into effect only after all state proceedings had been exhausted. That era is, for all practical purposes, over. It is simply unreasonable to rely on the events of that era, and especially on federal post-conviction relief law, as a basis for finding any serious fault with state habeas law.

More fundamental, however, is a general disregard by some for the function and the nature of the historic "Great Writ," which has been established as a fundamental constitutional right and protected from legislative abrogation by Article I, section 5 of the Utah

Constitution. *See also* art. VIII, §§ 3 & 5; *Hurst v. Cook,* 777 P.2d 1029, 1033–36 (Utah 1989). Clearly the writ of habeas corpus does indeed on occasion prolong criminal proceedings to some extent. But every right which the framers placed in the Constitution to protect individuals from injustice and abusive state power does exactly the same thing. Trials by jury lengthen the time required to try a case. The same is true concerning the privilege against self-incrimination, the right to the effective assistance of counsel, and the necessity of evidence showing guilt beyond a reasonable doubt. Criminal justice could be administered much more rapidly if such rights were not recognized and speed and efficiency were of overriding importance.

It is, of course, correct that habeas proceedings ordinarily occur after the conclusion of a trial, and in a very few cases actually prolong the underlying criminal proceeding. Nevertheless, the framers of the Utah Constitution clearly thought that price was not excessive given the fundamental liberty interest of not being imprisoned in violation of the Constitution. A writ of habeas corpus is a critical legal device for accomplishing that objective. It is, in fact, the only legal means of providing an innocent person the right of access to the courts for relief from a wrongful conviction once an appeal or the time for taking an appeal is concluded. Wrongful convictions, although rare, do occur for a variety of reasons. *See, e.g., Hurst,* 777 P.2d at 1036 n. 6. In recent years, DNA evidence has been used in a number of cases to prove conclusively that a prisoner who had spent many years in prison was not the person who had committed the crime of which he had been convicted. It is not correct that every person ever convicted of a crime was in fact guilty. Our system is, after all, human in origin and administration, and our means of ascertaining forensic truth is more limited in some situations than is generally assumed.

Justice Zimmerman suggests that "the remedy for the real problem ... is not a statute of limitation, but the candid recognition that the initial post-conviction proceeding is really part of the criminal trial and review process." Without addressing this suggestion in detail, I respectfully submit that this proposition raises enormously complicated problems of practicality as well as far-reaching issues of constitutionality. In the end, such a proposition, if adopted, would have only a marginal advantage in very limited situations and would not truly solve the underlying question of when a person who has been convicted of a crime but might nonetheless be innocent should have access to the courts.

It is certainly correct that numerous habeas petitions are filed that are on their face frivolous and a trial court should have, and in fact does have, the power to dismiss such petitions for being frivolous. *See e.g., Dunn v. Cook,* 791 P.2d 873, 875–76 (Utah 1990). Nevertheless, the fundamental interests of protecting life and liberty from error in judicial proceedings is so profound that appellate courts should not and must not defer to trial courts to the point where the weighty interests to be protected by the writ of habeas corpus are overlooked.